Joshua H. Haffner, Esq. SBN 188652
jhh@haffnerlawyers.com
Alfredo Torrijos, SBN 222458
at@haffnerlawyers.com
Vahan Mikayelyan, Esq. SBN 337023
vh@haffnerlawyers.com
**HAFFNER LAW PC**
15260 Ventura Blvd., Suite 1520
Sherman Oaks, California 91403
Tel: (213) 514-5681
Fax: (213) 514-5682

Shaun C. Setareh, SBN 204514
shaun@setarehlaw.com
Thomas A. Segal, SBN 222791
thomas@setarehlaw.com
**SETAREH LAW GROUP**
9665 Wilshire Blvd., Suite 430
Beverly Hills, California 90212
Telephone: (310) 888.7771
Facsimile: (310) 888.0109

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA CLARK, individually and as representative of a class of participants and beneficiaries and on behalf of the Centene Management Corporation Retirement Plan,<br><br>Plaintiff,<br><br>v.<br><br>CENTENE CORPORATION; FIDELITY MANAGEMENT TRUST COMPANY; FIDELITY INVESTMENTS INSTITUIONAL; and STRATEGIC ADVISORS, INC.,<br><br>Defendants. | CASE NO.:<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**(1) BREACH OF FIDUCIARY DUTY, 29 U.S.C. §1104(a);**<br><br>**(2) BREACH OF ERISA'S ANTI-INUREMENT PROVISION, 29 U.S.C. §1103(c)(1);**<br><br>**(3) BREACH OF ERISA'S PROHIBITED TRANSACTIONS, 29 U.S.C. § 1106(a)(1) and (b)(1); AND**<br><br>**(4) FAILURE TO MONITOR FIDUCIARIES.** |

-1-

**CLASS ACTION COMPLAINT**

Plaintiff Victoria Clark, individually and as representative of a class of participants and beneficiaries and on behalf of the Centene Management Corporation Retirement Plan ("Plaintiff"), alleges based upon information and belief as follows:

## NATURE OF ACTION

1. This action arises out of Defendants Centene Corporation, Fidelity Management Trust Company, Fidelity Investments Institutional, and Strategic Advisors, Inc.'s ("Defendants"), wrongful conduct in connection with employees' 401k retirement plan. As set forth herein, Defendants paid prohibited and excessive fees to parties in interest, used forfeited plan assets to reduce its employer contribution obligations, rather than for the benefit of plan participants, and failed to properly monitor the Plan's management and administration, in violation of the Employment Retirement Income Security Act ("ERISA") and Defendants' fiduciary responsibilities. In this action, Plaintiff seeks damages in connection with Defendants' wrongful conduct in misusing and mismanaging Plan assets.

## JURISDICTION AND VENUE

2. This action is brought under 29 U.S.C. §§ 1132(a), (e), (f) and (g) as it involves a claim by Plaintiff for employee benefits under an employee benefit plan regulated and governed by ERISA. Subject matter jurisdiction is predicated under these code sections as well as 28 U.S.C. § 1331 as this action involves a federal question.

3. The Court has personal jurisdiction over Defendants because ERISA provides for nationwide service of process, and each defendant has minimum contacts with the United States. See 29 U.S.C. § 1132(e)(2).

4. The venue is proper in this judicial district pursuant to 29 U.S.C. §1132(e)(2) (setting forth special venue rules applicable to ERISA actions).

///

///

**PARTIES**

5.      Plaintiff Victoria Clark is an individual and resident of California, Humboldt county, who was employed by Centene Management Company LLC, and was participating in the Plan at issue within the statute of limitations for each cause of action pled.

6.      The Centene Management Corporation Retirement Plan (the "Plan") is a defined contribution, individual account, employee pension benefit plan under 29 U.S.C. §1002(2)(A) and § 1002(34) and is subject to the provisions of ERISA pursuant to 29 U.S.C. § 1003(a)

7.      Plaintiff is informed and believes, and on that basis alleges, that Defendant Centene Corporation is a company authorized to conduct and is actually conducting business in the State of California, and is the Plan sponsor, and also the administrator of the Plan.

8.      Plaintiff is informed and believes, and on that basis alleges, that Defendant Fidelity Management Trust Company is a company, authorized to conduct and is actually conducting business in the State of California, and is trustee of the Plan and/or Plan assets.  Plaintiff is informed and believes, and on that basis alleges, that Defendant Fidelity Management Trust Company is an affiliate of Defendants Fidelity Investment Institutions and Strategic Advisors, Inc.  Plaintiff is informed and believes, and on that basis alleges, that Defendant Fidelity Investment Institutions is a fiduciary and/or party of interest of the Plan.

9.      Plaintiff is informed and believes, and on that basis alleges, that Defendant Fidelity Investment Institutions is a company authorized to conduct and is actually conducting business in the State of California, and acted as recordkeeper for the Plan and/or Plan assets.  Plaintiff is informed and believes, and on that basis alleges, that Defendant Fidelity Investment Institutions is an affiliate of Defendants Fidelity Management Trust Company and Strategic Advisors, Inc.  Plaintiff is

**COMPLAINT**

informed and believes, and on that basis alleges, that Defendant Fidelity Investment Institutions is a fiduciary and/or party of interest of the Plan.

10.    Plaintiff is informed and believes, and on that basis alleges, that Defendant Strategic Advisors, Inc. is a company authorized to conduct and is actually conducting business in the State of California, and is the managed account investment advisor for the Plan.   Plaintiff is informed and believes, and on that basis alleges, that Defendant Strategic Advisors, Inc. is an affiliate of Defendants Fidelity Management Trust Company and Fidelity Investment Institutions. Plaintiff is informed and believes, and on that basis alleges, that Defendant Strategic Advisors provides investment managed account services for the Plan and its participants, and has rendered investment advice for a fee or other compensation, direct or indirect, with respect to moneys held in the Plan.  Plaintiff is informed and believes, and on that basis alleges, that Defendant Strategic Advisors is a fiduciary and/or party in interest of the Plan.

11.    Defendants Fidelity Management Trust Company, Fidelity Investment Institutions, and Strategic Advisors, Inc. will be collectively referred to as "Fidelity."

12.    Defendants each exercised discretionary authority and/or control over the management and/or administration of the Plan, and/or rendered investment advice regarding the Plan, and are fiduciaries of the Plan, including pursuant to 29 U.S.C. §1002(21)(A).

13.    Plaintiff is informed and believes and thereon alleges that all defendants were at all relevant times acting as actual agents, conspirators, ostensible agents, alter egos, partners and/or joint venturers and/or employees of all other defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, and joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent authorization and ratification of their co-defendants; however, each of these

— 4 —

**COMPLAINT**

allegations are deemed "alternative" theories whenever not doing so would result in a contradiction with other allegations.

<strong>FACTUAL ALLEGATIONS</strong>

14. The assets of the Plan are held in a trust fund pursuant to 29 U.S.C. §1103(a).

15. The Plan is funded by a combination of employee/participant contributions (usually paid through wage withholdings) and employer contributions, which are deposited into the Plan's trust fund. Once deposited into the Plan's trust fund, all employee/participant and employer contributions become assets of the Plan.

**Defendants' Imposition Of Excessive And Prohibited Administration Fees.**

16. Defendant Fidelity acted under the Plan, either itself or through affiliated companies, as trustee, recordkeeper and/or investment manager, which presents conflicts of interest that implicate prohibited transactions.

17. Plaintiff is informed and believes, and on that basis alleges, that such managed account services include hidden and/or excessive costs, while providing no material advantage.

18. Defendants' use of Defendant Fidelity Investment Institutions as recordkeeper to provide and charge for Plan recordkeeping services presents a conflict because of Fidelity Investment Institutions relationship with the Plan trustee, Fidelity Management Trust Company, and Plan investment advisor, Strategic Advisors. Likewise, Defendants' use of Defendant Strategic Advisors as investment advisor for the Plan presents a conflict because of Strategic Advisors' relationship with the Plan trustee, Fidelity Management Trust Company, and Plan recordkeeper, Fidelity Investment Institutions.

19. By permitting Defendant Fidelity, either directly or indirectly through affiliates, to perform recordkeeping services, and provide investment advisor

services, Defendants have allowed extra costs that inflated per-participant expenses, breaching fiduciary duties, and engaging in prohibited transactions. Plaintiff is informed and believes, and on that basis alleges, that Fidelity has used its role as recordkeeper to obtain information for use in its role as investment advisor.

20. Plaintiff is informed and believes, and on that basis alleges, that Plan participants were paying Fidelity between approximately $39 and $50 per participant in administrative costs, between 2019 and 2023, as follows: 2019 - $50; 2020 - $40; 2021 - $49; 2022 -$48; 2023 - $39.

21. Plaintiff is informed and believes, and on that basis alleges, that comparable plans also using Fidelity during the same time period paid substantially less in administrative fees, ranging from approximately $3 - $31 per participant. As examples, Plaintiff is informed and believes, and on that basis alleges, that Fidelity was paid per participant the following amounts by the following plans for the same period:

a. The CBRE 401(k) Plan – 2019 - $18; 2020 - $22; 2021 - $26; 2022 -$31; 2023 - $21.

b. Disney Savings and Investment Plan - 2019 - $4; 2020 - $4; 2021 - $3; 2022 -$5; 2023 - $11.

c. Providence Health & Services 403(B) Value Plan - 2019 - $4; 2020 - $9; 2021 - $11; 2022 -$26; 2023 - $24.

22. Plaintiff is informed and believes that, even limiting administrative costs to recordkeeping fees, the Plan pays excessive fees to Fidelity relative to other plans. Thus, Plaintiff is informed and believes, and on that basis alleges, based on form 5500 filings, in 2022, that the Centene Plan paid Fidelity $37 per participant in recordkeeping, while the following entities paid Fidelity the following amounts per participant: CBRE - $9; Disney -$2; and Providence $12.

**COMPLAINT**

23.    Defendants Fidelity were fiduciaries and/or parties in interest of the Plan. Accordingly, the payment of fees to Fidelity defendants constituted prohibited transaction under ERISA.

24.    Defendants' charge of administrative fees, including recordkeeping fees, for Fidelity and/or its affiliates is excessive and unreasonable.

25.    Defendants allowed unreasonably excessive administrative expenses to be incurred by participants. The Plan at issue, and Plaintiffs interests in it, have been harmed by Defendants' inflated, conflicted administrative fees.

**Defendants' Misuse Of Forfeited Plan Assets.**

26.    Participants in the Plan immediately vest in their own contributions, and earnings on their contributions. Plaintiff is informed and believes, and on that basis alleges, that participants vest in 10% of employer contributions after 1 year of service; 30% after 2 years of service; 60% after 3 years of service; 80% after 4 years of service; and 100% after 5 years of service.

27.    Participants who have a break in service prior to full vesting of employer contributions, forfeit the balance of unvested employer contributions, and Defendants exercise control over how these Plan assets are thereafter allocated.

28.    Plaintiff is informed and believes, and on that basis alleges, that as part of a wrongful pattern and practice, Defendants have wrongfully and consistently used forfeited nonvested plan assets for its own benefit, to reduce future employer contributions, rather than for the benefit of Plan participants. Defendant's use of Plan forfeited assets to offset its employer contributions violates ERISA statues, including but not limited to, 29 U.S.C. §§1103(c)(1), 1104(a)(1), and 1106.

29.    Defendants made the following statement regarding use of forfeited funds in their Form 5500 statements filed for the years 2020-2024:

a. In 2020, Defendants stated as follows:

"For the years ended December 31, 2020 and 2019, employer contributions were reduced by $6,829,401 and $5,885,220, respectively, from forfeited nonvested accounts."

— 7 —

**COMPLAINT**

b.  In 2021, Defendants stated in their Form 5500 as follows:

"For the years ended December 31, 2021 and 2020, employer contributions were reduced by $11,856,138 and $6,829,401, respectively, from forfeited nonvested accounts."

c.  In 2022, Defendants stated as follows:

"For the years ended December 31, 2022 and 2021, employer contributions were reduced by $8,584,762 and $11,856,138, respectively, from forfeited nonvested accounts."

d.  In 2023, Defendants stated as follows:

"For the years ended December 31, 2023 and 2022, employer contributions were reduced by $7,602,197 and $8,584,762, respectively, from forfeited nonvested accounts."

30.    Defendants' allocation of forfeited fund assets to reduce their own employer contributions benefited Defendants, but harmed the Plan and participants in the Plan, by reducing Plan assets, not allocating forfeited funds to participants' accounts, and/or by causing participants to incur expenses that could otherwise have been covered in whole or in part by forfeited funds.

31.    By choosing to use forfeited Plan assets to benefit itself and not the Plan or the Plan's participants, Defendants have placed their own interests above the interests of the Plan and its participants

32.    Plaintiff is informed and believes, and on that basis alleges, that Defendants management of the Plan was also imprudent in that, among other things, Defendants permitted underperforming investments to be used in the Plan. Plaintiffs have requested more detailed information from Defendants regarding their management of investments of the Plan pursuant to 29 C.F.R. § 2550.404a-5, but Defendants have not yet provided it.  Plaintiff will seek leave to amend to more fully allege ERISA violations in connection with mismanagement of investment options once such information is received.

## CLASS ACTION ALLEGATIONS

33.    Plaintiff brings this action on behalf of himself and all others similarly situated as a Class Action pursuant to Federal Rules of Civil Procedure Rule 23.

Pursuant to Rule 23(b)(1) and (b)(2), Plaintiff seeks certification of a class defined as follows:

> All participants and beneficiaries of Centene Management Corporation Retirement Plan, who participated in the plan at anytime within the statute of limitations for each claim pled, excluding Defendants and members of the Committees.

34. Plaintiff and the Class reserve the right under Federal Rule of Civil Procedure Rule 23(c)(l)(C) to amend or modify the class to include greater specificity, by further division into subclasses, or by limitation to particular issues.

35. This action has been brought and may be properly maintained as a class action under the provisions of Federal Rules of Civil Procedure Rule 23 because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

36. **Numerosity:** The potential members of the proposed class as defined are so numerous that joinder of all the members of the proposed class is impracticable. While the precise number of proposed class members has not been determined at this time, Plaintiff is informed and believes that there are a substantial number of participants and beneficiaries Plan who have been similarly affected.

37. **Commonality:** Common questions of law and fact exist as to all members of the proposed class, and predominate

38. **Typicality**: The claims of the named Plaintiff are typical of the claims of the proposed class. Plaintiff and all members of the class are similarly affected by Defendants' wrongful conduct.

39. **Adequacy of representation**: Plaintiff will fairly and adequately represent and protect the interests of the members of the proposed class. Counsel who represent Plaintiff are competent and experienced in litigating large and complex class actions.

40.   **Superiority of class action**:  A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Individual joinder of all members of the proposed Class is not practicable, and common questions of law and fact exist as to all class members. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

41.   **Rule 23(b) requirements**.  Inconsistent or varying adjudications with respect to individual members of the class would establish incompatible standards of conduct. Adjudications with respect to individual class members would be dispositive of the interests of the other members not parties to the individual adjudications and/or would substantially impair or impede their ability to protect their interests.  Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

<u>**FIRST CLAIM FOR RELIEF**</u>

**BREACH OF FIDUCIARY DUTY**

**29 U.S.C. § 1104(a)**

42.   Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

43.   Under 29 U.S.C. § 1104(a)(1)(A), Defendants were required to discharge their duties owed to the Plan "solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries, and (ii) defraying reasonable expenses of administering the plan." Defendants breached their fiduciary duty under Section 1104(a)(1)(A) by allowing excessive administrative expenses to be incurred,

— 10 —

**COMPLAINT**

without proper oversight, and through prohibited transaction and/or fees paid to fiduciaries and/or parties in interest. Defendants also breached their fiduciary duty under Section 1104(a)(1)(A) by utilizing forfeited Plan assets for their benefit, to decrease future employer contributions, rather than the benefit of Plan participants. In doing so, Defendants placed their interests above the interests of Plan participants and beneficiaries.

44.     Pursuant to 29 U.S.C. § 1104(a)(1)(B), Defendants were required to discharge their duties with respect to the Plan "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." Defendants breached their fiduciary duty under Section 1104(a)(1)(B) by allowing excessive administrative expenses, prohibited transaction and/or fees paid to fiduciaries and/or parties in interest. Defendants also breached their duty of prudence under Section 1104(a)(1)(B) by declining to use the forfeited funds in the plan for the benefit of Plan participants, and instead using such Plan assets to reduce the Company's own contributions to the Plan.

45.     Pursuant to 29 U.S.C. § 1104(a)(1)(D), Defendants were required to discharge duties solely in the interest of Plan participants, and "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of" ERISA. Defendants breached their fiduciary duty under Section 1104(a)(1)(D) by using forfeited Plan assets, and/or paying fees to parties in interest in prohibited transactions, in violation of ERISA statues, as alleged herein.

46.     Defendants failed to engage in a reasoned and impartial decision-making process regarding use of forfeited funds, payment of administrative fees, and/or oversight of investment options. Defendants' actions in this regard have not

been in the best interest of the Plan's participants, and failed to properly consider participants' interests.

47.   Defendants' wrongful conduct, as alleged herein, caused the Plan to receive fewer future employer contributions than it would otherwise receive, and depleted Plan assets.  Defendants' wrongful conduct, as alleged herein, caused the Plan and/or its participants to pay inflated and prohibited administrative expenses, and appreciate and/or earn less than it should have.  As a direct and proximate cause of Defendants' fiduciary breaches, the Plan suffered injury and losses and, pursuant to 29 U.S.C. § 1109, Defendants are liable for such losses.

48.   Each Defendant knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach.  Thus, each Defendant is liable for the losses under 29 U.S.C. § 1105(a).

## SECOND CLAIM FOR RELIEF

### BREACH OF ERISA'S PROHIBITED TRANSACTIONS

### 29 U.S.C. § 1106

49.   Plaintiff re-alleges and incorporates herein by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

50.   29 U.S.C. § 1106(a)(1) provides that "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . (A) . . . exchange . . . of any property between the plan and a party in interest; . . . (C) furnishing of goods, services, or facilities between the plan and a party in interest; (D) transfer to or use by or for the benefit of a party in interest, of any assets of the plan."  Defendants are

parties in interest, as that term is defined under 29 U.S.C. §1002 (14), because they are Plan fiduciaries and/or service providers of the Plan.

51.   29 U.S.C. § 1106(b) provides that "[a] fiduciary with respect to a plan shall not," among other things, "deal with the assets of the plan in his own interest or for his own account."

52.   Defendants violated these prohibitions by, among other things, utilizing Plan assets to offset future employer contributions to the Plan (through forfeitures), and/or paying administrative expenses to fiduciaries or parties in interest.

53.   As alleged herein, Defendants caused the Plan to engage in transactions that Defendants knew or should have known constituted a direct or indirect exchange of existing Plan assets between the Plan and parties in interest, furnishing of goods, services, or facilities between the plan and a party in interest, and/or a use of Plan assets by or for the benefit of a party in interest.  Specifically, as to forfeited Plan assets, Defendants utilized them to offset future employer contributions.  In addition, Defendants paid fees from Plan assets to fiduciary and/or parties in interest Defendants Fidelity.  Defendants dealt with the assets of the Plan in their own interest and for their own account.

54.   As a result of these prohibited transactions, Defendants caused the Plan to suffer losses in the amount of the Plan assets that were substituted for future employer contributions, and/or excessive and prohibited fees paid to fiduciaries or parties in interest, and the lost investment returns on those assets.

55.   Pursuant to 29 U.S.C. § 1109(a), Defendants are liable for the Plan losses resulting from violation of ERISA's prohibition on these transactions, as alleged in this claim, and must restore to the Plan all profits secured through their use of Plan assets, and is subject to other equitable or remedial relief as appropriate.

///

///

## FOURTH CLAIM FOR RELIEF

## FAILURE TO MONITOR FIDUCIARIES

56.    Plaintiff re-alleges and incorporates herein by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

57.    Defendants oversaw the overall governance of the Plan and had authority to delegate fiduciary responsibilities.  Plaintiff is informed and believes, and on that basis alleges, that Defendants administered the Plan, and/or appointed the administrator of the Plan to assist in Plan management and delegated to him or her the authority to handle Plan assets, which led to the issues alleged herein.

58.    Defendants had a duty to monitor the person(s) to whom it delegated fiduciary responsibilities, and to take prompt action to protect the plan and correct any breaches of fiduciary duty or violation of ERISA statutes.

59.    Defendants breached its duty to monitor the fiduciaries to whom it delegated responsibility for Plan management by, among other things, unreasonably failing to monitor the use of forfeited funds, paying unreasonably excessive administrative expenses to parties in interest, and/or providing underperforming and/or conflicted investment options, by failing to take steps to ensure that its fiduciary duties and ERISA statutes were properly complied with respect to Plan assets, and permitting Defendants to continuously act contrary to their duties under ERISA, as alleged herein.

60.    As a direct and proximate cause of Defendants' breach of their duty to monitor fiduciaries, the Plan and/or its participants suffered losses, as alleged herein.

## REQUEST FOR RELIEF

Wherefore, Plaintiff, on behalf of the Plan and all similarly situated Plan participants and beneficiaries, prays for judgment against Defendants as follows:

**COMPLAINT**

1.    That Defendants have breached their fiduciary duties and engaged in prohibited conduct and transactions as described above;

2.    That Defendants are personally liable to make good to the Plan and/or its participants all losses to the Plan resulting from each violation of ERISA described above, and to otherwise restore the Plan to the position it would have occupied but for these violations;

3.    That all assets and profits secured by Defendants as a result of each violation of ERISA described above are to disgorged;

4.    For an accounting to determine the amounts Defendants must make good to the Plan under 29 U.S.C. § 1109(a);

5.    Removal of the fiduciaries who have breached their fiduciary duties and enjoin them from future ERISA violations;

6.    Surcharge against Defendants and in favor of the Plan all amounts involved in any transactions which such accounting reveals were improper, excessive and/or in violation of ERISA;

7.    Certify the case as a class action;

8.    Award attorneys' fees and costs under 29 U.S.C. § 1132(g)(1) and the common fund doctrine;

9.    Award class representatives a service award.

10.    Order the payment of interest to the extent it is allowed by law; and

11.    Grant other equitable or remedial relief as the Court deems appropriate.

DATED:  November 12, 2025                    HAFFNER LAW PC

                                                      By: _____
                                                      Joshua H. Haffner
                                                      Alfredo Torrijos
                                                      Vahan Mikayelyan

— 15 —

**COMPLAINT**

SETAREH LAW GROUP

By:
Shaun C. Setareh, SBN 204514
Thomas A. Segal

Attorneys for Plaintiff and all
Others similarly situated

— 16 —
COMPLAINT