Joshua H. Haffner, SBN 188652
  jhh@haffnerlawyers.com
Alfredo Torrijos, SBN 222458
  at@haffnerlawyers.com
Vahan Mikayelyan, SBN 337023
  vh@haffnerlawyers.com
**HAFFNER LAW PC**
15260 Ventura Blvd., Suite 1520
Sherman Oaks, California 91403
Tel: (213) 514-5681 / Fax: (213) 514-5682

Shaun C. Setareh, SBN 204514
  shaun@setarehlaw.com
Thomas A. Segal, SBN 222791
  thomas@setarehlaw.com
SETAREH LAW GROUP
420 N Camden Drive, Suite 100
Beverly Hills, CA 90210
Tel: (310) 888.7771 / Fax: (310) 888.0109

*Attorneys for Plaintiff Victoria Clark
and the Proposed Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA CLARK, individually and as representative of a class of participants and beneficiaries and on behalf of the Centene Management Corporation Retirement Plan, <br><br> Plaintiff, <br><br> v. <br><br> CENTENE CORPORATION, <br><br> Defendant. | Case No.  3:25-CV-09743-RFL <br><br> HON. RITA F. LIN <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT** |

**FIRST AMENDED CLASS ACTION COMPLAINT**
(Case No.  3:25-CV-09743-RFL)

Plaintiff Victoria Clark ("Clark" or "Plaintiff"), individually and on behalf of all others similarly situated, and on behalf of the Centene Management Corporation Retirement Plan, makes the following allegations based upon information and belief, except as to those allegations specifically pertaining to Plaintiff and her counsel, which are based on personal knowledge. Plaintiff brings this action for monetary damages, disgorgement, and equitable relief under the Employee Retirement Income Security Act of 1974 ("ERISA").

## NATURE OF THE ACTION

1. To safeguard retirement savings, ERISA imposes strict fiduciary duties of loyalty and prudence upon employers and plan fiduciaries. Fiduciaries must act "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1)(A), with the "care, skill, prudence, and diligence" of a prudent expert, 29 U.S.C. § 1104(a)(1)(B). Furthermore, they must refrain from dealing with plan assets in their own interest or engaging in conflicted transactions with parties-in-interest. 29 U.S.C. § 1106.

2. This action arises out of Defendant Centene Corporation's ("Defendant" or "Centene") systemic breaches of these fundamental duties in its management of the Centene Management Corporation Retirement Plan (the "Plan"). As a "jumbo" defined contribution plan with over $4.7 billion in assets and approximately 67,000 participants, the Plan possessed immense bargaining power to demand transparent, low-cost investment vehicles and rock-bottom administrative fees.

3. Instead of leveraging this power to benefit its employees, Centene operated the Plan to serve its own corporate treasury and the commercial interests of the Plan's recordkeeper, Fidelity Investments. Centene breached its fiduciary duties through three distinct, structural failures:

4. First, Centene abandoned transparent, SEC-regulated mutual funds in favor of structurally opaque, state-regulated Collective Investment Trusts (CITs) – specifically, the proprietary "Fidelity Freedom Blend T Series" – as the Plan's Qualified Default Investment Alternative (QDIA). By utilizing these CITs, managed by an affiliate of the Plan's

**FIRST AMENDED CLASS ACTION COMPLAINT**
**(Case No.  3:25-CV-09743-RFL)**

recordkeeper, Centene engaged in a "vertical integration" prohibited transaction.  This "regulatory arbitrage" shields key data from fiduciaries and participants, avoids SEC pricing rules, permits "valuation laundering" of underlying illiquid assets, and hides lucrative indirect revenue-sharing arrangements.

5.    Second, Centene permitted the Plan's recordkeeper to extract objectively unreasonable direct and indirect compensation.  Under the Plan's fee structure, Fidelity extracted massive, hidden indirect compensation (revenue sharing) embedded within the opaque CITs.  When accounting for this total compensation, Centene saddled its participants with administrative burdens ranging from $39 to $50 per participant annually – drastically outpacing the $3 to $31 paid by similarly situated jumbo plans.

6.    Third, when Plan participants separate from employment prior to full vesting, unvested employer contributions are "forfeited" back to the Plan.  Section 11.09 of the governing Plan Document grants Centene the explicit discretion to use these forfeited Plan assets to defray the Plan's administrative expenses.  Despite the exorbitant administrative fees being charged out-of-pocket to participants, Centene consistently exercised its fiduciary discretion in its own self-interest – electing to use approximately $34.8 million in forfeitures between 2020 and 2023 to reduce its own corporate contribution obligations. Furthermore, in violation of IRS regulations, Centene failed to exhaust these forfeiture suspense accounts by year-end, carrying over hundreds of thousands of dollars in unallocated Plan assets.

7.    Through these actions, Defendant violated ERISA's strict fiduciary duties of loyalty and prudence, as well as the statute's prohibited transaction and anti-inurement provisions.  Plaintiff seeks to recover the resulting losses to the Plan and the disgorgement of all ill-gotten profits.

## JURISDICTION AND VENUE

8.    This action is brought under 29 U.S.C. §§ 1132(a)(2) and (a)(3). Subject matter jurisdiction is predicated under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).

9.    The Court has personal jurisdiction over Defendant because ERISA provides

— 3 —

**FIRST AMENDED CLASS ACTION COMPLAINT**
**(Case No.  3:25-CV-09743-RFL)**

for nationwide service of process, and Defendant transacts business and has significant contacts in this District. See 29 U.S.C. § 1132(e)(2).

10. Venue is proper in this judicial district pursuant to 29 U.S.C. § 1132(e)(2) because the Plan is administered in this District, some or all of the fiduciary breaches occurred in this District, and Defendant resides and/or may be found in this District.

## **THE PARTIES**

11. Plaintiff Victoria Clark is an individual and resident of Humboldt County, California, who was employed by Centene Management Company LLC and participated in the Plan during the Class Period. Plaintiff suffered financial harm as her individual account was subjected to excessive administrative fees, her account assets were funneled into conflicted and unmonitored proprietary CITs, and she was forced to pay out-of-pocket for administrative expenses that should have been offset by Plan forfeitures.

12. The Centene Management Corporation Retirement Plan (the "Plan") is a defined contribution, individual account, employee pension benefit plan under 29 U.S.C. § 1002(2)(A) and § 1002(34).

13. Defendant Centene Corporation ("Centene") is the Plan Sponsor and the Plan Administrator. Centene exercised discretionary authority and control over the management and administration of the Plan, making it a fiduciary pursuant to 29 U.S.C. § 1002(21)(A).

14. Fidelity Management Trust Company ("FMTC") serves as the Trustee of the Plan and holds the Plan's assets. FMTC is an affiliate of Fidelity Investments Institutional and Strategic Advisors, Inc. By virtue of its role as Trustee and its discretionary authority over Plan assets, FMTC is a fiduciary and a party-in-interest to the Plan under ERISA.

15. Fidelity Investments Institutional ("FII") serves as the Recordkeeper for the Plan. FII is an affiliate of Fidelity Management Trust Company and Strategic Advisors, Inc. FII is a party-in-interest to the Plan under ERISA by virtue of providing services to the Plan.

16. Strategic Advisors, Inc. ("SAI") is an affiliate of Fidelity Management Trust

**FIRST AMENDED CLASS ACTION COMPLAINT**
**(Case No. 3:25-CV-09743-RFL)**

Company and Fidelity Investments Institutional. SAI provides investment managed account services to the Plan and its participants and renders investment advice for a fee (Service Code 27). Accordingly, SAI is a fiduciary and a party-in-interest to the Plan.

17.    FIAM Trust Company ("FIAMTC") – also identified in filings as Fidelity Institutional Asset Management – is an affiliate of the Plan's recordkeeper, Fidelity Investments Institutional. FIAMTC serves as the trustee and manager of the "Fidelity Freedom Blend T Series" Collective Investment Trusts (CITs), which serve as the Plan's Qualified Default Investment Alternative (QDIA). FIAMTC is a party-in-interest under 29 U.S.C. § 1002(14) because it provides services to the Plan and receives compensation derived from Plan assets.

18.    Fidelity Management Trust Company, Fidelity Investments Institutional, FIAM Trust Company, and Strategic Advisors, Inc. are collectively referred to herein as "Fidelity."

## FACTUAL ALLEGATIONS

**A.    THE PROHIBITED AND IMPRUDENT SELECTION OF PROPRIETARY CITS.**

19.    Under ERISA, a fiduciary must act prudently and exclusively in the interest of participants. This requires a diligent process to verify the value, holdings, and risks of Plan investments.

20.    A review of the Plan's Form 5500 Schedule D (Participating Plan Information) reveals a deliberate architectural choice by Centene to utilize Fidelity's proprietary, non-SEC-regulated vehicles – specifically, the "Fidelity Freedom Blend T Series" (from the 2005 to 2060 target date vintages). These are explicitly listed as "C-code" investments, designating them as Common/Collective Trusts (CITs), not mutual funds.

21.    The Fidelity Freedom Blend T Series serves as the Plan's Qualified Default Investment Alternative (QDIA). Because participants are automatically defaulted into the QDIA, the vast majority of Plan assets are channeled into these vehicles.

— 5 —

22.    The menu construction represents a prohibited "vertical integration" of services. Fidelity Investments Institutional serves as the Plan's Recordkeeper. Under 29 USC § 1002(14)(B), any person providing services to a plan is defined as a "party-in-interest." FIAMTC, its affiliate, creates and manages the CITs. By placing its service provider's proprietary CITs on the menu and directing participant assets into them, Centene caused the Plan to engage in a prohibited transaction under 29 USC § 406(a)(1)(C) (furnishing of services) and 29 USC § 406(a)(1)(D) (transfer of plan assets to a party-in-interest).

23.    As clarified by the Supreme Court in *Cunningham v. Cornell University*, 604 U.S. 693 (2025), Plaintiff need only plausibly allege that a transaction with a party-in-interest occurred to state a claim under Section 406(a); she does not need to plead the absence of an exemption. Here, Schedule C of the Form 5500 lists Fidelity as a service provider, and Schedule D confirms millions of dollars of Plan assets were invested in FIAMTC's proprietary CITs. The burden shifts entirely to Defendant to prove the arrangement serves the Plan's interest and that the hidden fees extracted from these CITs are reasonable.

24.    Centene's selection of the Fidelity CITs also constituted a per se breach of the duty of prudence because the vehicles are structurally opaque. Unlike SEC-regulated mutual funds, which are governed by the Investment Company Act of 1940, the Fidelity Freedom Blend CITs are domiciled in New Hampshire and regulated solely by the New Hampshire Banking Department.

25.    This regulatory gap means the CITs do not file a public prospectus (Form N-1A), do not disclose quarterly public holdings (Form N-PORT), and lack independent mutual fund board oversight. Critically, while SEC mutual funds are capped at holding no more than 15% in illiquid assets, state-regulated CITs have no statutory limit on illiquid assets, allowing managers to hide investments in private equity, private credit, or crypto-linked derivatives.

26.    Because these vehicles operate in a "black box," Centene's fiduciaries had no

— 6 —

**FIRST AMENDED CLASS ACTION COMPLAINT**
(Case No.  3:25-CV-09743-RFL)

independent, third-party means of verifying the CITs' actual holdings or true Net Asset Value (NAV).  Centene abdicated its duty to monitor, relying entirely on Fidelity's self-reported data.

27.    Furthermore, state-regulated CITs allow for "appraisal-based" or "smoothed" valuations of illiquid assets, leading to "Not Actual Value" pricing.  By selecting a vehicle that permits this "valuation laundering," Centene traded transparency for fictional stability, violating the core duty of prudence and exposing participants to massive unmonitored liquidity risks.

**B.     UNREASONABLE AND EXCESSIVE ADMINISTRATIVE FEES.**

28.    Fidelity acted under the Plan, either itself or through affiliated companies, as trustee, recordkeeper and/or investment manager, which presents conflicts of interest that implicate prohibited transactions.  Such managed account services include hidden and/or excessive costs, while providing no material advantage.  Plan participants, including Plaintiff, were enrolled in or subject to the managed account program offered by Strategic Advisors, and/or that the fees associated with such program were charged to or affected the Plan and its participants generally.

29.    Defendant's use of Fidelity Investment Institutions as recordkeeper to provide and charge for Plan recordkeeping services presents a conflict because of Fidelity Investment Institutions relationship with the Plan trustee, Fidelity Management Trust Company, and Plan investment advisor, Strategic Advisors. Likewise, Defendant's use of Strategic Advisors as investment advisor for the Plan presents a conflict because of Strategic Advisors' relationship with the Plan trustee, Fidelity Management Trust Company, and Plan recordkeeper, Fidelity Investment Institutions.

30.    By permitting Fidelity, either directly or indirectly through affiliates, to perform recordkeeping services, and provide investment advisor services, Defendant has allowed extra costs that inflated per-participant expenses, breaching fiduciary duties, and engaging in prohibited transactions.  Fidelity has used its role as recordkeeper to obtain information for use in its role as investment advisor.

— 7 —

**FIRST AMENDED CLASS ACTION COMPLAINT**
**(Case No.  3:25-CV-09743-RFL)**

31.   Plan participants, including Plaintiff, were paying Fidelity and its affiliates between approximately $39 and $50 per participant in recordkeeping and administrative costs, between 2019 and 2023, as follows: 2019 - $50; 2020 - $40; 2021 - $49; 2022 -$48; 2023 - $39.  Even when the analysis is limited to recordkeeping fees alone, excluding managed account advisory fees charged by Strategic Advisors, the Plan's per-participant recordkeeping costs substantially exceeded those of comparable plans, as described below.

32.   That comparable defined contribution plans of similar size and complexity, also using Fidelity as recordkeeper during the same time period, paid substantially less in recordkeeping and administrative fees per participant.  As examples, Fidelity was paid per participant the following amounts by the following plans for the same period:

    a.  The CBRE 401(k) Plan – 2019 - $18; 2020 - $22; 2021 - $26; 2022 -$31; 2023 - $21.

    b.  Disney Savings and Investment Plan - 2019 - $4; 2020 - $4; 2021 - $3; 2022 - $5; 2023 - $11.

    c.  Providence Health & Services 403(B) Value Plan - 2019 - $4; 2020 - $9; 2021 - $11; 2022 -$26; 2023 - $24.

33.   While Strategic Advisors charged separate optional fees, the base administrative and recordkeeping costs imposed on all participants were objectively excessive because they were heavily subsidized through hidden indirect compensation.

34.   Recordkeeping expenses can be paid directly from plan assets or indirectly by taking money from plan participants' individual accounts via the Plan's investments in a practice known as revenue sharing.

35.   According to the Plan's Form 5500 Schedule C, Fidelity Institutional received compensation under multiple Service Codes:

    a.   Code 37 & 64 (Direct Recordkeeping Fees): Fees paid directly by the Plan.

    b.   Code 60 (Sub-Transfer Agency Fees) & Code 65 (Indirect Recordkeeping Fees):  These codes confirm the existence of "revenue

— 8 —

**FIRST AMENDED CLASS ACTION COMPLAINT**
**(Case No.  3:25-CV-09743-RFL)**

sharing" payments. This indicates that Fidelity is extracting indirect compensation from the underlying investments (including its own affiliated CITs) to subsidize its recordkeeping arm.

36. Through this structure, Fidelity effectively pays itself – moving money from its investment arm to its recordkeeping arm. When combining the direct recordkeeping fees with the indirect revenue-sharing fees exacted from Plan assets, the Plan's total per-participant costs ranged from $39 to $50 annually between 2019 and 2023.

37. As a "jumbo" plan with over 67,000 participants and nearly $5 billion in assets, Centene wielded immense bargaining power to demand a flat, low-cost per-participant fee. Yet, comparator jumbo plans using Fidelity as a recordkeeper commanded vastly superior pricing during the exact same period for the exact same core recordkeeping services:

- Disney Savings Plan: ~$3 to $11 per participant.
- Providence Health & Services Plan: ~$4 to $26 per participant.
- CBRE 401(k) Plan: ~$18 to $31 per participant.

38. Centene's defense that comparator plans also utilized revenue sharing is unavailing. Even when accounting for revenue sharing in comparator plans (such as the CBRE plan), Centene's total fee burden remained wildly excessive. A prudent fiduciary would have tracked indirect compensation, monitored the revenue sharing flowing from the proprietary CITs, and leveraged the Plan's massive size to negotiate a flat, per-participant recordkeeping fee. Centene's failure to conduct regular Requests for Proposals (RFPs) and its willful blindness to indirect fees resulted in the unlawful extraction of millions of dollars from participant accounts.

39. Defendant's charge of administrative fees, including recordkeeping fees, for Fidelity and/or its affiliates is excessive and unreasonable.

40. The exemption for service provider transactions under 29 U.S.C. § 1108(b)(2) does not apply to the transactions described herein because the administrative fees and other compensation paid to Fidelity and its affiliates were not reasonable in amount.

— 9 —

**FIRST AMENDED CLASS ACTION COMPLAINT**
(Case No. 3:25-CV-09743-RFL)

Moreover, the bundled arrangement whereby Fidelity affiliates simultaneously served as trustee, recordkeeper, and managed account investment advisor for the Plan created inherent conflicts of interest and resulted in duplicative and unnecessary costs that inflated Plan expenses beyond what was necessary for the operation of the Plan.  Plaintiff is informed and believes, and on that basis alleges, that the services provided by Fidelity and its affiliates could have been obtained at materially lower cost from other qualified service providers, or through a more competitive bidding process.

41.    Defendant allowed unreasonably excessive administrative expenses to be incurred by participants.  The Plan at issue, and Plaintiff's interests in it, have been harmed by Defendant's inflated, conflicted administrative fees.

## C.    DISLOYAL MISUSE OF FORFEITED PLAN ASSETS.

42.    The Plan employs a graded 5-year vesting schedule for employer matching contributions.  When a participant separates from employment prior to full vesting, the unvested portion of the employer's contribution is "forfeited" back to the Plan. These forfeitures are existing Plan Assets.

43.    Under ERISA, fiduciaries must discharge their duties "solely in the interest of the participants" and for the exclusive purpose of providing benefits and "defraying reasonable expenses of administering the plan."

44.    Plan Section 11.09 explicitly grants Centene the discretion to use these funds to pay administrative expenses.  Prior to July 15, 2021, Section 11.09 stated: "...forfeitures shall first be used to pay administrative expenses under the Plan, if so directed by the Employer."  After July 15, 2021, the Plan stated that forfeitures "may be used to pay administrative expenses, if so directed by the Administrator, but otherwise shall be applied to reduce the contributions of the Employer."  Similarly, Plan Section 19.05 states that administrative costs "shall... be charged against the Accounts of all Participants as directed by the Administrator."

45.    The decision to direct (or decline to direct) the use of forfeitures to pay administrative expenses is a discretionary fiduciary act.  Faced with a glaring conflict of

— 10 —

interest between saving the corporation money (by reducing employer contributions) or saving the participants money (by defraying the exorbitant $39-$50 per-participant administrative fees), Centene consistently and reflexively chose itself.

46.     Between 2020 and 2023, Centene systematically drained the forfeiture account to offset its own corporate liabilities:

- 2023: $7,602,197
- 2022: $8,584,762
- 2021: $11,856,138
- 2020: $6,829,401

47.     In total, Centene diverted $34,872,498 in Plan Assets to benefit its own corporate treasury.

48.     The loss to Plaintiff and the participants is the out-of-pocket payment of millions in administrative fees deducted directly from their individual accounts – fees that should have been eliminated by the forfeited funds had Centene acted loyally.  The $8.5 million in forfeitures diverted to Centene's balance sheet in 2022 could have easily wiped out the entire administrative fee burden for all 67,000 participants.

49.     By failing to investigate which option was in the best interest of the Plan, and automatically choosing the option that enriched the corporate treasury by $34.8 million, Centene breached its duty of loyalty.

## CLASS ALLEGATIONS

50.     Plaintiff brings this action on behalf of herself and as representative of all others who are similarly situated.  Pursuant to Rules 23(a), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff seeks certification of the following class initially defined as follows:

> *All participants and beneficiaries of the Centene Management Corporation Retirement Plan who participated in the Plan at any time from November*

— 11 —

*12, 2019, through the date of judgment (the "Class").*

51. Excluded from each of the above classes is Defendant, including any entity in which Defendant has a controlling interest, is a parent or subsidiary, or which is controlled by Defendant, as well as the officers, directors, affiliates, legal representatives, predecessors, successors, and assigns of Defendant, members of Plan's administrative committees, and their immediate families.

52. Plaintiff reserves the right to amend or modify the above class definition with greater specificity or division into subclasses after having had an opportunity to conduct discovery.

53. This action has been brought and may be properly maintained on behalf of the Class proposed herein under Rule 23 of the Federal Rules of Civil Procedure.

54. Numerosity. Fed. R. Civ. P. 23(a)(1). The members of the Class are so numerous that joinder of all members is impractical. Plaintiff is informed and believes that there are thousands of members of each of the classes. The precise number of class members can be ascertained from Defendant's records.

55. Commonality and Predominance. Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to each class, which predominate over any questions affecting individual members of the Class. These common questions of law and fact include, without limitation:

a. Whether Defendant caused the Plan to engage in prohibited transactions by selecting Fidelity CITs;

b. Whether Centene breached its duties of prudence and loyalty by allowing excessive direct and indirect recordkeeping fees; and

c. Whether Centene breached its duty of loyalty by directing Plan forfeitures to offset its corporate contributions instead of defraying participant expenses.

56. Typicality. Fed. R. Civ. P. 23 (a)(3). Plaintiff's claims are typical of the claims of the Class she seeks to represent. Plaintiff and all Class members were exposed

— 12 —

**FIRST AMENDED CLASS ACTION COMPLAINT**
**(Case No.  3:25-CV-09743-RFL)**

to uniform practices and sustained injuries arising out of and caused by Defendant's conduct.

57.    Adequacy of Representation. Fed. R. Civ. P. 23(a)(4). Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

58.    Superiority. Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Defendant, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, Class members will continue to suffer losses and Defendant's misconduct will proceed without remedy. Even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard that might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court. Finally, Plaintiff knows of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

**FIRST CLAIM FOR RELIEF**
**BREACH OF ERISA'S PROHIBITED TRANSACTIONS**
**29 U.S.C. § 1106**
**(By Plaintiff And Class Members Against Defendant)**

59.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

60.    29 U.S.C. § 1106(a)(1) provides that "[a] fiduciary with respect to a plan shall

— 13 —

**FIRST AMENDED CLASS ACTION COMPLAINT**
**(Case No.  3:25-CV-09743-RFL)**

not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . (A) . . . exchange . . . of any property between the plan and a party in interest; . . . (C) furnishing of goods, services, or facilities between the plan and a party in interest; (D) transfer to or use by or for the benefit of a party in interest, of any assets of the plan." Defendant is a party in interest, as that term is defined under 29 U.S.C. §1002(14), because it is a Plan fiduciary and/or service provider of the Plan.

61.    29 U.S.C. § 1106(b) provides that "[a] fiduciary with respect to a plan shall not," among other things, "deal with the assets of the plan in his own interest or for his own account."

62.    Defendant violated these prohibitions by, among other things, utilizing Plan assets to offset future employer contributions to the Plan (through forfeitures), and/or paying administrative expenses to fiduciaries or parties in interest.

63.    As alleged herein, Defendant caused the Plan to engage in transactions that Defendant knew or should have known constituted a direct or indirect exchange of existing Plan assets between the Plan and parties in interest, furnishing of goods, services, or facilities between the plan and a party in interest, and/or a use of Plan assets by or for the benefit of a party in interest. Specifically, as to forfeited Plan assets, Defendant utilized them to offset future employer contributions. In addition, Defendant paid fees from Plan assets to fiduciaries and/or parties in interest. Defendant dealt with the assets of the Plan in its own interest and for its own account.

64.    As a result of these prohibited transactions, Defendant caused the Plan to suffer losses in the amount of the Plan assets that were substituted for future employer contributions, and/or excessive and prohibited fees paid to fiduciaries or parties in interest, and the lost investment returns on those assets.

65.    Fidelity Investments Institutional is a "party-in-interest" pursuant to 29 U.S.C. § 1002(14)(B) because it provides recordkeeping services to the Plan. FIAMTC is an affiliate of the recordkeeper and manager of the CITs.

— 14 —

**FIRST AMENDED CLASS ACTION COMPLAINT**
**(Case No.  3:25-CV-09743-RFL)**

66. During the Class Period, Centene caused the Plan to invest hundreds of millions of dollars into "Fidelity Freedom Blend" Collective Investment Trusts – proprietary products created, managed, and trusteed by affiliates of Fidelity.

67. Under the pleading standard articulated by the Supreme Court in *Cunningham v. Cornell University*, Centene's decision to funnel investments into these products constitutes a *per se* "furnishing of goods, services, or facilities" between the plan and a party-in-interest (29 U.S.C. § 1106(a)(1)(C)) and a "transfer to, or use by or for the benefit of a party in interest, of any assets of the plan" (29 U.S.C. § 1106(a)(1)(D)).

68. Because of the opaque structure of the state-regulated CITs – which allow for the extraction of unverified indirect compensation, Sub-Transfer Agency Fees (revenue sharing), and float income – Defendant cannot meet its burden of proving these transactions qualify for the "reasonable compensation" exemption under ERISA § 408(b)(2).

69. Furthermore, by structuring the menu to funnel assets into products that generate indirect revenue sharing for its own service providers, Centene permitted a structural conflict of interest that resulted in self-dealing in violation of 29 U.S.C. § 1106(b)(1). Similarly, Centene violated 29 U.S.C. § 1106(b)(1) by dealing with the assets of the plan in its own interest when allocating $34.8 million in Plan forfeitures toward offsetting its own outstanding corporate contribution debts.

70. Pursuant to 29 U.S.C. § 1109(a), Defendant is liable for the Plan losses resulting from violation of ERISA's prohibition on these transactions, as alleged in this claim, and must restore to the Plan all profits secured through its use of Plan assets, and is subject to other equitable or remedial relief as appropriate.

WHEREFORE, Plaintiff and the Class pray judgment against Defendant as hereafter set forth.

/ / /

/ / /

/ / /

— 15 —

**FIRST AMENDED CLASS ACTION COMPLAINT**
**(Case No.  3:25-CV-09743-RFL)**

## SECOND CLAIM FOR RELIEF
### BREACH OF FIDUCIARY DUTY
### 29 U.S.C. § 1104(A)(1)
### (By Plaintiff And Class Members Against Defendant)

71.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

72.    Under 29 U.S.C. § 1104(a)(1)(A), Defendant was required to discharge its duties owed to the Plan "solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries, and (ii) defraying reasonable expenses of administering the plan." Defendant breached its fiduciary duty under Section 1104(a)(1)(A) by allowing excessive administrative expenses to be incurred, without proper oversight, and through prohibited transaction and/or fees paid to fiduciaries and/or parties in interest. Defendant also breached its fiduciary duty under Section 1104(a)(1)(A) by utilizing forfeited Plan assets for its benefit, to decrease future employer contributions, rather than the benefit of Plan participants. In doing so, Defendant placed its interests above the interests of Plan participants and beneficiaries.

73.    Pursuant to 29 U.S.C. § 1104(a)(1)(B), Defendant was required to discharge its duties with respect to the Plan "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." Defendant breached its fiduciary duty under Section 1104(a)(1)(B) by allowing excessive administrative expenses, prohibited transaction and/or fees paid to fiduciaries and/or parties in interest. Defendant also breached its duty of prudence under Section 1104(a)(1)(B) by declining to use the forfeited funds in the plan for the benefit of Plan participants, and instead using such Plan assets to reduce the Company's own contributions to the Plan.

74.    Pursuant to 29 U.S.C. § 1104(a)(1)(D), Defendant was required to discharge duties solely in the interest of Plan participants, and "in accordance with the documents

— 16 —

and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of" ERISA. Defendant breached its fiduciary duty under Section 1104(a)(1)(D) by using forfeited Plan assets, and/or paying fees to parties in interest in prohibited transactions, in violation of ERISA statutes, as alleged herein.

75.    Defendant failed to engage in a reasoned and impartial decision-making process regarding use of forfeited funds, payment of administrative fees, and/or oversight of investment options. Defendant's actions in this regard have not been in the best interest of the Plan's participants, and failed to properly consider participants' interests.

76.    Defendant's wrongful conduct, as alleged herein, caused the Plan to receive fewer future employer contributions than it would otherwise receive, and depleted Plan assets. Defendant's wrongful conduct, as alleged herein, caused the Plan and/or its participants to pay inflated and prohibited administrative expenses, and appreciate and/or earn less than it should have. As a direct and proximate cause of Defendant's fiduciary breaches, the Plan suffered injury and losses and, pursuant to 29 U.S.C. § 1109, Defendant is liable for such losses.

77.    Centene breached this duty through a pervasive failure of process. First, Centene selected and retained investment vehicles (the Fidelity CITs) that are structurally opaque. Because these state-regulated CITs are exempt from the Investment Company Act of 1940, do not file Form N-PORT, and do not provide a public prospectus, Centene could not – and did not – monitor the underlying risks, liquidity, or valuation of these assets, violating the continuing duty to monitor

78.    Second, Centene failed to investigate the valuation methodologies employed by the Fidelity CITs, exposing Plan participants to the risk of "valuation laundering" (the carrying of illiquid assets at inflated, non-market values).

79.    Third, Centene failed to prudently monitor and control the Plan's recordkeeping and administrative fees. Centene failed to properly aggregate and cap the direct compensation and indirect revenue sharing paid to Fidelity. Had Centene acted prudently and benchmarked the Plan's total recordkeeping costs against peers like the

— 17 —

FIRST AMENDED CLASS ACTION COMPLAINT
(Case No. 3:25-CV-09743-RFL)

Disney or CBRE plans via regular RFPs, it would have negotiated millions of dollars in fee reductions.

80.    Defendant knowingly participated in the breach, knowing that such acts were a breach, and committed a breach by failing to lawfully discharge its own fiduciary duties and failed to make any reasonable effort under the circumstances to remedy the breach. Thus, Defendant is liable for the losses under 29 U.S.C. § 1105(a).

WHEREFORE, Plaintiff and the Class pray judgment against Defendant as hereafter set forth.

### THIRD CLAIM FOR RELIEF
### BREACH OF ERISA'S ANTI-INUREMENT PROVISION
### 29 U.S.C. §1103(c)(1)
### (By Plaintiff And Class Members Against Defendant)

81.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

82.    Pursuant to 29 U.S.C. § 1103(c)(1), "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purpose of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan."

83.    The funds in a participant's accounts that are forfeited when a break in service occurs prior to full vesting are assets of the Plan.

84.    By using Plan assets for its own benefit, to reduce its own future employer contributions to the Plan, thereby saving itself millions of dollars in contribution costs, Defendant caused the assets of the Plan to inure to the benefit of the employer in violation of 29 U.S.C. § 1103(c)(1).  Specifically, Defendant's use of forfeitures to offset its own contribution obligations had the economic effect of diverting Plan assets to the employer's benefit, because the funds that would have otherwise been contributed by the employer as new Plan assets were instead retained by the employer.

85.    Pursuant to 29 U.S.C. § 1109(a), Defendant is liable for the Plan losses resulting from violation of ERISA's anti-inurement provision as alleged in this claim, and

— 18 —

must restore to the Plan all profits secured through its use of Plan assets, and is subject to other equitable or remedial relief as appropriate.

WHEREFORE, Plaintiff and the Class pray judgment against Defendant as hereafter set forth.

## FOURTH CLAIM FOR RELIEF
## FAILURE TO MONITOR FIDUCIARIES
### (By Plaintiff And Class Members Against Defendant)

86.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

87.    Defendant oversaw the overall governance of the Plan and had authority to delegate fiduciary responsibilities.  Plaintiff is informed and believes, and on that basis alleges, that Defendant appointed or designated one or more individuals, committees, or entities—including, on information and belief, an Investment Committee, Administrative Committee, and/or Plan Administrator—to assist in the management and administration of the Plan, including the selection and monitoring of service providers and the determination of how forfeited Plan assets would be allocated.  Defendant delegated to such fiduciaries the authority to manage and control Plan assets, which delegation led to the issues alleged herein.

88.    Defendant had a duty to monitor the person(s) to whom it delegated fiduciary responsibilities, and to take prompt action to protect the plan and correct any breaches of fiduciary duty or violation of ERISA statutes.

89.    Defendant breached its duty to monitor the fiduciaries to whom it delegated responsibility for Plan management by, among other things, unreasonably failing to monitor the use of forfeited funds, paying unreasonably excessive administrative expenses to parties in interest, and/or providing underperforming and/or conflicted investment options, by failing to take steps to ensure that its fiduciary duties and ERISA statutes were properly complied with respect to Plan assets, and permitting Defendant to continuously act contrary to its duties under ERISA, as alleged herein.

**FIRST AMENDED CLASS ACTION COMPLAINT**
**(Case No.  3:25-CV-09743-RFL)**

90.    As a direct and proximate cause of Defendant's breach of its duty to monitor fiduciaries, the Plan and/or its participants suffered losses, as alleged herein.

WHEREFORE, Plaintiff and the Class pray judgment against Defendant as hereafter set forth.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, on behalf of the Plan and all similarly situated Plan participants and beneficiaries, prays for judgment against Defendant as follows:

1.    That Defendant has breached its fiduciary duties and engaged in prohibited conduct and transactions as described above;

2.    That Defendant is personally liable to make good to the Plan and/or its participants all losses to the Plan resulting from each violation of ERISA described above, and to otherwise restore the Plan to the position it would have occupied but for these violations;

3.    That all assets and profits secured by Defendant as a result of each violation of ERISA described above are to be disgorged;

4.    For an accounting to determine the amounts Defendant must make good to the Plan under 29 U.S.C. § 1109(a);

5.    Removal of the fiduciaries who have breached their fiduciary duties and enjoin them from future ERISA violations;

6.    Surcharge against Defendant and in favor of the Plan all amounts involved in any transactions which such accounting reveals were improper, excessive and/or in violation of ERISA;

7.    Certify the case as a class action;

8.    Award attorneys' fees and costs under 29 U.S.C. § 1132(g)(1) and the common fund doctrine;

9.    Award class representatives a service award.

10.    Order the payment of interest to the extent it is allowed by law; and

11.    Grant other equitable or remedial relief as the Court deems appropriate.

— 20 —

**FIRST AMENDED CLASS ACTION COMPLAINT**
**(Case No.  3:25-CV-09743-RFL)**

DATED:  February 13, 2026                    **HAFFNER LAW PC**

                                    By:    /s/ Alfredo Torrijos
                                            Joshua H. Haffner
                                            Alfredo Torrijos
                                            Vahan Mikayelyan

                                    **SETAREH LAW GROUP**
                                        Shaun C. Setareh
                                        Thomas A. Segal

                                    *Counsel for Plaintiff Victoria Clark*

— 21 —

**FIRST AMENDED CLASS ACTION COMPLAINT**
**(Case No.  3:25-CV-09743-RFL)**