Richard E. Nowak (*Pro Hac Vice*)
**MAYER BROWN LLP**
71 South Wacker Drive
Chicago, Illinois 60606-4637
Telephone: (312) 701-8314
Facsimile: (312) 701-7711
rnowak@mayerbrown.com

E. Brantley Webb (*Pro Hac Vice*)
**MAYER BROWN LLP**
1999 K Street NW
Washington, D.C. 20006
Telephone: (202) 263-3000
Facsimile: (202) 263-3300
bwebb@mayerbrown.com

Ankur Mandhania (SBN 302373)
**MAYER BROWN LLP**
575 Market Street, Suite 2500
San Francisco, California 94105
Telephone: (415) 874-4230
Facsimile: (650) 331-2060
amandhania@mayerbrown.com

[additional counsel listed on signature page]

*Counsel for Defendant Centene Corporation*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VICTORIA CLARK, individually, and as representative of a class of participants and beneficiaries and on behalf of the Centene Management Corporation Retirement Plan, <br><br> Plaintiff, <br><br> v. <br><br> CENTENE CORPORATION, <br><br> Defendant. | Case No. 3:25-cv-09743-RFL <br><br> **DEFENDANT CENTENE CORPORATION'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT** <br><br> Date: May 19, 2026 <br> Time: 10:00 a.m. <br> Place: Courtroom 15 <br><br> Judge: Rita F. Lin |

**TABLE OF CONTENTS**

**Page**

BACKGROUND ................................................................................................................ 2

STANDARD OF REVIEW .............................................................................................. 3

ARGUMENT .................................................................................................................... 4

I.      Plaintiff's Forfeiture Claims Fail. ......................................................................... 4

        A.      Plaintiff fails to state a breach of fiduciary duty claim (Count II). ........... 4

        B.      Plaintiff fails to state a forfeiture prohibited transaction claim (Count I).............. 8

        C.      Plaintiff's anti-inurement claim fails (Count III). ...................................... 8

II.     Plaintiff's Challenge To The Freedom Blend CITs Fail. ....................................... 9

        A.      Plaintiff's *per se* challenge to CITs in 401(k) plans fails (Count II). ................... 9

        B.      Plaintiff lacks standing to challenge the Freedom Blend CITs............................ 11

        C.      Plaintiff's prohibited transaction claim fails (Count I). ...................................... 11

        D.      Plaintiff fails to plead an ERISA Section 406(b)(1) claim (Count I). ................. 12

III.    Plaintiff's Administrative Fee Claims Fail. ......................................................... 13

        A.      Plaintiff lacks standing to challenge the Plan's managed account offering......... 13

        B.      Plaintiff fails to allege a fiduciary breach (Count II). ........................................ 14

        C.      Plaintiff fails to allege a prohibited transaction with respect to the Plan's recordkeeping and administrative services (Count I). ......................................... 18

IV.     Plaintiff Fails To State A Monitoring Claim (Count IV)................................................ 20

CONCLUSION................................................................................................................ 20

i

DEFENDANT CENTENE CORPORATION'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED CLASS ACTION COMPLAINT; CASE NO. 3:25-CV-09743-RFL

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armenta v. WillScot Mobile Mini Holdings Corp.*,
2025 WL 2645518 (D. Ariz. Sep. 15, 2025)...................................................................... *passim*

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................................4

*Baird v. BlackRock Inst. Tr. Co.*,
403 F. Supp. 3d 765 (N.D. Cal. 2019) ................................................................................10

*Barragan v. Honeywell Int'l, Inc.*,
2025 WL 2383652 (D.N.J. Aug. 18, 2025) ...........................................................................1

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................................4

*Bozzini v. Ferguson Enters., LLC*,
2025 WL 1547617 (N.D. Cal. May 29, 2025) .......................................................................1

*Brewer v. Alliance Coal LLC*,
2025 WL 3527171 (N.D. Okla. Dec. 9, 2025)........................................................................1

*Brown v. Peco Foods, Inc.*,
2025 WL 3210857 (S.D. Miss. Nov. 14, 2025).......................................................................1

*Cain v. Siemens Corp.*,
2025 WL 2172684 (D.N.J. July 31, 2025).......................................................................1, 5, 6

*In re Calpine Corp. ERISA Litig.*,
2005 WL 1431506 (N.D. Cal. Mar. 31, 2005).....................................................................20

*Cano v. Home Depot, Inc.*,
2025 WL 2589567 (N.D. Ga. Aug. 26, 2025) .......................................................................1

*Cho v. Prudential Ins.*,
2021 WL 4438186 (D.N.J. Sep. 27, 2021) ..........................................................................13

*Collins v. Ne. Grocery, Inc.*,
149 F.4th 163 (2d Cir. 2025) ...............................................................................................13

*Collins v. Ne. Grocery, Inc.*,
2025 WL 2383710 (2d Cir. Aug. 18, 2025)..........................................................................13

*Cunningham v. Cornell Univ.*,
604 U.S. 693 (2025)...................................................................................................... *passim*

*Curtis v. Amazon.com Servs., LLC*,
2026 WL 124323 (W.D. Wash. Jan. 16, 2026)...................................................................1, 8

*D.L. Markham DDS, MSD, Inc. 401(k) Plan v. Variable Annuity Life Ins.*,
     88 F.4th 602 (5th Cir. 2023) ...................................................................................................19

*Davis v. Salesforce.com, Inc.*,
     2020 WL 5893405 (N.D. Cal. Oct. 5, 2020)...........................................................................20

*Davis v. Salesforce.com, Inc.*,
     2022 WL 1055557 (9th Cir. Apr. 8, 2022) .............................................................................10

*Del Bosque v. Coca-Cola Sw. Beverages LLC*,
     2025 WL 3171326 (N.D. Tex. Nov. 13, 2025)..........................................................................1

*Dempsey v. Verizon Commc'ns, Inc.*,
     2026 WL 72197 (S.D.N.Y. Jan. 8, 2026) ...............................................................................19

*Dimou v. Thermo Fisher Sci. Inc.*,
     2024 WL 4508450 (S.D. Cal. Sep. 19, 2024) ...............................................................1, 5, 6, 8

*Donelson v. Meijer, Inc.*,
     2025 WL 3754241 (W.D. Mich. Dec. 29, 2025) ...................................................................1, 6

*Enstrom v. SAS Inst. Inc.*,
     2026 WL 459258 (E.D.N.C. Feb. 12, 2026) .............................................................................1

*Estay v. Ochsner Clinic Found.*,
     2025 WL 2644782 (E.D. La. Sep. 15, 2025) ............................................................................1

*Fifth Third Bancorp v. Dudenhoeffer*,
     573 U.S. 409 (2014)...............................................................................................................4, 14

*Fleming v. Kellogg Co.*,
     2025 WL 4053174 (W.D. Mich. Dec. 8, 2025) ......................................................................19

*Fumich v. Novo Nordisk Inc.*,
     2025 WL 2399134 (D.N.J. Aug. 19, 2025) ...............................................................................1

*Garner v. Northrop Grumman Corp.*,
     2025 WL 3488657 (E.D. Va. Dec. 4, 2025) .............................................................................1

*Garnick v. Wake Forest Univ. Baptist Med. Ctr.*,
     629 F. Supp. 3d 352 (M.D.N.C. 2022) ...................................................................................17

*Guyes v. Nestle USA, Inc.*,
     2022 WL 18106384 (E.D. Wisc. Nov. 21, 2022) .........................................................13, 16, 17

*Hernandes v. AT&T Servs., Inc.*,
     2025 WL 3208360 (C.D. Cal. Nov. 14, 2025).................................................................. *passim*

*Hughes v. Nw. Univ.*,
     63 F.4th 615 (7th Cir. 2023) ....................................................................................................6

*Humphries v. Mitsubishi Chem. Am., Inc.*,
     2024 WL 4711296 (S.D.N.Y. Nov. 7, 2024)...........................................................................14

*Hutchins v. HP, Inc.*,
737 F. Supp. 3d 851 (N.D. Cal. 2024) ...............................................................5, 6, 9

*Hutchins v. HP Inc.*,
767 F. Supp. 3d 912 (N.D. Cal. 2025) ...............................................................1, 6, 7, 8

*Jacob v. RTX Corp.*,
2026 WL 173228 (E.D. Va. Jan. 22, 2026) ..........................................................1, 5

*Kawasaki Jukogyo Kabushiki Kaisha v. Rorze Corp.*,
677 F. Supp. 3d 1079 (N.D. Cal. 2023) ...............................................................2

*Kayes v. Pac. Lumber Co.*,
51 F.3d 1449 (9th Cir. 1995) ...............................................................................13

*Lalonde v. Mass. Mut. Ins.*,
728 F. Supp. 3d 141 (D. Mass. 2024) ...............................................................12, 18

*Liao v. Fisher Asset Mgmt., LLC*,
2024 WL 4351869 (N.D. Cal. Sep. 30, 2024) ......................................................8

*Lockheed v. Spink*,
517 U.S. 882 (1996)...........................................................................................11, 18

*Madrigal v. Kaiser Found. Health Plan, Inc.*,
2025 WL 1299002 (C.D. Cal. May 2, 2025) .......................................................1

*Marder v. Lopez*,
450 F.3d 445 (9th Cir. 2006) ...............................................................................3

*Mathews v. Chevron Corp.*,
362 F.3d 1172 (9th Cir. 2004) ............................................................................7

*Matula v. Wells Fargo & Co.*,
2025 WL 1707878 (D. Minn. June 18, 2025).......................................................1

*McWashington v. Nordstrom, Inc.*,
2025 WL 1736765 (W.D. Wash. June 23, 2025)..............................................1, 3, 6, 7

*McWhorter v. Serv. Corp. Int'l*,
748 F. Supp. 3d 459 (S.D. Tex. 2024) ...............................................................13

*Middleton v. Amentum Parent Holdings LLC*,
2025 WL 2229959 (D. Kan. Aug. 5, 2025) .......................................................1, 6

*Naylor v. BAE Sys., Inc.*,
2024 WL 4112322 (E.D. Va. Sep. 5, 2024)..........................................................1

*Nguyen v. Westlake Servs. Holding Co.*,
2024 WL 694909 (C.D. Cal. Feb. 5, 2024)..........................................................3

*Nykiel v. Smith & Nephew, Inc.*,
2025 WL 2347430 (D. Mass. Aug. 13, 2025) ......................................................1

DEFENDANT CENTENE CORPORATION'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED CLASS ACTION COMPLAINT; CASE NO. 3:25-CV-09743-RFL

*Peeler v. Bayada Home Health Care, Inc.*,
2026 WL 208630 (W.D.N.C. Jan. 27, 2026) ...................................................................13

*Pegram v. Herdrich*,
530 U.S. 211 (2000)..........................................................................................................20

*Piercy v. AT&T Inc.*,
2025 WL 2505660 (D. Mass. Aug. 29, 2025) ..................................................................13

*Pizarro v. Home Depot, Inc.*,
634 F. Supp. 3d 1260 (N.D. Ga. 2022) ............................................................................18

*Polanco v. WPP Grp. USA, Inc.*,
2025 WL 3003060 (S.D.N.Y. Oct. 27, 2025) .................................................................1, 7

*Sievert v. Knight-Swift Transp. Holdings, Inc.*,
780 F. Supp. 3d 870 (D. Ariz. 2025) ...........................................................................1, 6, 7

*Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v.
Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013)..............................................................................................14

*Steen v. Sonoco Prods. Co.*,
2025 WL 2420725 (D.S.C. June 4, 2025)......................................................................1, 8

*Sulyma v. Intel Corp. Inv. Pol'y Comm.*,
909 F.3d 1069 (9th Cir. 2018) ..........................................................................................12

*Terraza v. Safeway Inc.*,
241 F. Supp. 3d 1057 (N.D. Cal. 2017) ............................................................................10

*Tibble v. Edison Int'l*,
639 F. Supp. 2d 1122 (C.D. Cal. 2009) ............................................................................11

*Tillery v. WakeMed Health & Hosps.*,
2026 WL 125784 (E.D.N.C. Jan. 15, 2026) ......................................................................1

*Tobias v. NVIDIA Corp.*,
2021 WL 4148706 (N.D. Cal. Sep. 13, 2021) ......................................................10, 14, 17

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)............................................................................................................4

*U.S. Airways, Inc. v. McCutchen*,
569 U.S. 88 (2013)..............................................................................................................5

*Wehner v. Genetech, Inc.*,
2021 WL 507599 (N.D. Cal. Feb. 9, 2021) ....................................................14, 15, 16, 17

*White v. Chevron Corp.*,
2017 WL 2352137 (N.D. Cal. May 31, 2017)..................................................................17

*Wildman v. Am. Century Servs.*,
362 F. Supp. 3d 685 (W.D. Mo. 2019) ..............................................................................9

v

DEFENDANT CENTENE CORPORATION'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED CLASS ACTION COMPLAINT; CASE NO. 3:25-CV-09743-RFL

*Williams v. Centene Corp.*,
  2023 WL 2755544 (E.D. Mo. Mar. 31, 2023) ............................................................2, 14, 15

*Wright v. JPMorgan Chase & Co.*,
  2025 WL 1683642 (C.D. Cal. June 13, 2025) ....................................................... *passim*

*Wright v. Or. Metallurgical Corp.*,
  360 F.3d 1090 (9th Cir. 2004) ....................................................................................5, 7, 8

**Statutes**

29 U.S.C. § 413 ..........................................................................................................................11, 12

29 U.S.C. § 1002(14)(B) ...................................................................................................................19

29 U.S.C. § 1059 ...............................................................................................................................18

29 U.S.C. § 1103(c)(1) ........................................................................................................................8

29 U.S.C. § 1104(a)(1)(B) .................................................................................................................14

29 U.S.C. § 1106(a)(1) ................................................................................................................12, 19

N.H. Rev. Stat. § 564-B:1-101 *et seq.* .............................................................................................10

**Other Authorities**

12 C.F.R. § 9.18 .................................................................................................................................10

29 C.F.R. § 2510.3-101(h)(1) ...........................................................................................................10

29 C.F.R. § 2550.404a-5 ..............................................................................................................10, 12

29 C.F.R. § 2550.408b-2 ...................................................................................................................10

88 Fed. Reg. 12,282 .............................................................................................................................6

88 Fed. Reg. 12,284 .............................................................................................................................6

88 Fed. Reg. 12,285 .............................................................................................................................6

Fed. R. Civ. P. 12(b) ...................................................................................................................1, 3, 4

Fed. R. Civ. P. 15(c)(1)(B) ...............................................................................................................12

**NOTICE OF MOTION AND MOTION TO DISMISS**

PLEASE TAKE NOTICE that, on May 19, 2026, at 10:00 a.m., or as soon as the matter may be heard by the Honorable Rita F. Lin, in Courtroom 15 of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Centene Corporation ("Centene") shall move to dismiss Plaintiff Victoria Clark's First Amended Class Action Complaint (Dkt. 34, "AC") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

The Motion is based on the following grounds. Plaintiff filed this lawsuit on November 12, 2025, challenging the allocation of forfeitures in the Centene Management Corporation Retirement Plan ("Plan") and the Plan's recordkeeping and administrative fees. After Centene moved to dismiss all of Plaintiff's claims (Dkt. 32), Plaintiff filed an Amended Complaint (Dkt. 34), asserting the same forfeiture and fee-related claims that Centene had moved to dismiss and adding a new claim challenging Centene's decision to offer the Fidelity Freedom Blend T Series target-date funds in the Plan's investment lineup because they are collective investment trusts ("CITs"). Plaintiff once again fails to state a claim and her Amended Complaint should be dismissed for the following reasons:

*Plan Forfeitures:* Plaintiff's breach of fiduciary duty claim challenging the allocation of the Plan's forfeitures fails because Centene complied with the terms of the Plan, was not obligated by ERISA to allocate the forfeitures in Plaintiff's preferred manner, and because Plaintiff's claims are contrary to decades of federal regulations. Plaintiff's claims also fail because she does not allege a loss to the Plan. Plaintiff's forfeiture prohibited transaction claim fails because she does not allege a "transaction" between the Plan and any other party, much less a prohibited one.

*Fidelity Freedom Blend CITs:* Plaintiff's claims challenging the Freedom Blend CITs fail because her *per se* claim that it is always imprudent to offer a CIT in a 401(k) plan is baseless and she lacks Article III standing because she does not allege she was harmed by the Plan's offering of the Freedom Blend CITs. Plaintiff's related prohibited transaction claim fails because it is time-barred and Plaintiff fails to plausibly allege a self-dealing prohibited transaction under ERISA Section 406(b)(1).

*Plan's Recordkeeping and Administrative Services:* Plaintiff's claims challenging the Plan's recordkeeping and administrative services also fail because she fails to plausibly allege that the Plan's fees were excessive for the services being received. Plaintiff relies on only three comparator plans without alleging those plans received similar recordkeeping and administrative services as the Plan, and her methodology for calculating the Plan's (and her comparator plans') fees is fatally flawed. Plaintiff also lacks Article III standing to challenge the Plan's managed account services, having never enrolled in a managed account. In addition, Plaintiff's prohibited transaction claim fails because she fails to allege either a party-in-interest transaction or a self-dealing transaction, she lacks Article III standing, and her claim is time-barred.

*Monitoring Claim:* Plaintiff's derivative monitoring claim fails because she does not allege an underlying breach of fiduciary duty and she alleges no facts supporting any failure to monitor.

The Motion is based on this Notice and Motion, the attached Memorandum of Points and Authorities, the concurrently filed Declaration of Richard E. Nowak and all exhibits attached thereto, the pleadings, papers, and records in this action, any matters of which this Court shall take judicial notice, and such further evidence or argument as Centene may present prior to or at any hearing on this Motion.

## STATEMENT OF ISSUES TO BE DECIDED

Whether the Court should dismiss the Amended Complaint for lack of Article III standing pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: March 16, 2026

Respectfully Submitted,

*/s/ Richard E. Nowak*
MAYER BROWN LLP

Richard E. Nowak (*Pro Hac Vice*)
*rnowak@mayerbrown.com*
71 South Wacker Drive
Chicago, IL 60606

E. Brantley Webb (*Pro Hac Vice*)
*bwebb@mayerbrown.com*
1999 K Street NW
Washington, D.C. 20006

Ankur Mandhania (SBN 302373)
*amandhania@mayerbrown.com*
575 Market St., Suite 2500
San Francisco, CA 94105

Malori McGill Fery (*Pro Hac Vice*)
*mmcgillfery@mayerbrown.com*
201 South Main Street, Suite 1100
Salt Lake City, UT 84111

*Counsel for Defendant Centene Corporation*

## MEMORANDUM OF POINTS AND AUTHORITIES

This lawsuit is part of an ongoing wave of copycat lawsuits seeking to impose retroactive liability on plan fiduciaries who, in accordance with the terms of their retirement plans, allocated forfeited, unvested company contributions to the sponsoring company's contributions to the plan. As Centene explained in its initial motion to dismiss (Dkt. 32), Plaintiff's forfeiture theory—which has been rejected by dozens of courts[1] and the Department of Labor ("DOL")[2]—contradicts ERISA, longstanding Treasury regulations, and the terms of the Plan. Rather than acknowledge the fatal flaws in her claims, Plaintiff filed an Amended Complaint doubling down on her forfeiture

[1] *Enstrom v. SAS Inst. Inc.*, 2026 WL 459258, at *9 (E.D.N.C. Feb. 12, 2026); *Jacob v. RTX Corp.*, 2026 WL 173228 (E.D. Va. Jan. 22, 2026); *Tillery v. WakeMed Health & Hosps.*, 2026 WL 125784 (E.D.N.C. Jan. 15, 2026); *Hernandes v. AT&T Servs., Inc.*, 2025 WL 3208360 (C.D. Cal. Nov. 14, 2025); *Armenta v. WillScot Mobile Mini Holdings Corp.*, 2025 WL 2645518 (D. Ariz. Sep. 15, 2025); *Hutchins v. HP Inc.*, 767 F. Supp. 3d 912 (N.D. Cal. 2025) ("*Hutchins II*"); *Bozzini v. Ferguson Enters., LLC*, 2025 WL 1547617 (N.D. Cal. May 29, 2025); *Curtis v. Amazon.com Servs., LLC*, 2026 WL 124323 (W.D. Wash. Jan. 16, 2026); *Madrigal v. Kaiser Found. Health Plan, Inc.*, 2025 WL 1299002 (C.D. Cal. May 2, 2025); *Wright v. JPMorgan Chase & Co.*, 2025 WL 1683642 (C.D. Cal. June 13, 2025); *McWashington v. Nordstrom, Inc.*, 2025 WL 1736765 (W.D. Wash. June 23, 2025); *Sievert v. Knight-Swift Transp. Holdings, Inc.*, 780 F. Supp. 3d 870 (D. Ariz. 2025); *Dimou v. Thermo Fisher Sci. Inc.*, 2024 WL 4508450 (S.D. Cal. Sep. 19, 2024); *Garner v. Northrop Grumman Corp.*, 2025 WL 3488657 (E.D. Va. Dec. 4, 2025); *Naylor v. BAE Sys., Inc.*, 2024 WL 4112322 (E.D. Va. Sep. 5, 2024); *Donelson v. Meijer, Inc.*, 2025 WL 3754241 (W.D. Mich. Dec. 29, 2025); *Brewer v. Alliance Coal LLC*, 2025 WL 3527171 (N.D. Okla. Dec. 9, 2025); *Brown v. Peco Foods, Inc.*, 2025 WL 3210857 (S.D. Miss. Nov. 14, 2025); *Del Bosque v. Coca-Cola Sw. Beverages LLC*, 2025 WL 3171326 (N.D. Tex. Nov. 13, 2025); *Polanco v. WPP Grp. USA, Inc.*, 2025 WL 3003060 (S.D.N.Y. Oct. 27, 2025); *Estay v. Ochsner Clinic Found.*, 2025 WL 2644782 (E.D. La. Sep. 15, 2025); *Cano v. Home Depot, Inc.*, 2025 WL 2589567 (N.D. Ga. Aug. 26, 2025); *Fumich v. Novo Nordisk*, 2025 WL 2399134 (D.N.J. Aug. 19, 2025); *Nykiel v. Smith & Nephew, Inc.*, 2025 WL 2347430 (D. Mass. Aug. 13, 2025); *Middleton v. Amentum Parent Holdings LLC*, 2025 WL 2229959 (D. Kan. Aug. 5, 2025); *Cain v. Siemens Corp.*, 2025 WL 2172684 (D.N.J. July 31, 2025); *Matula v. Wells Fargo & Co.*, 2025 WL 1707878 (D. Minn. June 18, 2025); *Steen v. Sonoco Prods. Co.*, 2025 WL 2420725 (D.S.C. June 4, 2025); *Barragan v. Honeywell Int'l, Inc.*, 2025 WL 2383652 (D.N.J. Aug. 18, 2025).

[2] DOL has filed four amicus briefs asking U.S. Courts of Appeal to affirm the dismissal of forfeiture claims. *See* Brief for the U.S. Sec'y of Labor at 1, *Hutchins v. HP, Inc.*, No. 25-826 (9th Cir. filed July 9, 2025), Dkt. 24.1 ("DOL Br.") (**Ex. 1**); Brief for the U.S. Sec'y of Labor at 1, *Wright v. JPMorgan Chase & Co.*, No. 25-4235 (9th Cir. filed Jan. 8, 2026), Dkt. 41.1 (**Ex. 2**); Brief for the U.S. Sec'y of Labor, *Cain v. Siemens Corp.*, No. 25-2564 (3d Cir. filed Jan. 23, 2026), Dkt. 42 (**Ex. 3**); Brief for the U.S. Sec'y of Labor, *Barragan v. Honeywell Int'l Inc.*, No. 25-2609 (3d Cir. filed Jan. 30, 2026), Dkt. 42 (**Ex. 4**).

theory and ignoring the ever-growing majority of courts rejecting her claims, including identical claims filed by her counsel, *Hernandes*, 2025 WL 3208360, and claims challenging the same forfeiture language as the Plan's language, *Armenta*, 2025 WL 2645518.

Plaintiff also attempts to sustain this lawsuit by alleging for the first time in the Amended Complaint that Centene violated ERISA by offering the Fidelity Freedom Blend T Series target-date funds ("Freedom Blend CITs"). This is a thinly veiled attempt to take advantage of *Cunningham v. Cornell University*, which the Supreme Court warned could result in an "avalanche of meritless litigation." 604 U.S. 693, 707 (2025). But Plaintiff's CIT claims are fatally flawed. Among other reasons, Plaintiff lacks standing to assert them, her claims are time-barred, and her *per se* challenge to all CITs in 401(k) plans is legally and factually unsupported.

Finally, Plaintiff doubles down on her meritless challenge to the Plan's recordkeeping and administrative services, without addressing the recent dismissal of a more detailed, but similarly flawed, lawsuit against Centene. *See Williams v. Centene Corp.*, 2023 WL 2755544 (E.D. Mo. Mar. 31, 2023). Plaintiff lacks standing to challenge the Plan's managed account services and does not plausibly allege the Plan's recordkeeping fees were excessive relative to the services received. Plaintiff's prohibited transaction claim fails because she does not allege a party-in-interest or a self-dealing transaction, she lacks standing, and her claim is time-barred.

The Court should dismiss the Amended Complaint with prejudice.

## BACKGROUND[3]

Plaintiff Victoria Clark is a former Centene employee and a Plan participant. Amended Complaint, Dkt. 34 ("AC"), ¶ 11. She seeks to represent a class of participants and beneficiaries "who participated in the Plan at any time from November 12, 2019 through the date of judgment." *Id.* ¶ 50. Centene is a leading provider of government-sponsored healthcare based in St. Louis, Missouri.[4] The Plan is a defined contribution 401(k) plan that provides participants with individual accounts to save for retirement. *Id*. ¶ 12. Participants' accounts are funded through their own wage

---

[3] Plaintiff's "well-pleaded factual allegations" are accepted as true solely for the purpose of this motion to dismiss. *Kawasaki Jukogyo Kabushiki Kaisha v. Rorze Corp.*, 677 F. Supp. 3d 1079, 1083 (N.D. Cal. 2023).

[4] *See* Centene Corporation, https://www.centene.com (last visited Jan. 19, 2026).

withholdings and Centene's contributions. *Id.*[5] Participants' contributions vest immediately, while a five-year vesting schedule applies to Centene's contributions. *Id.* ¶ 42. Participants forfeit unvested contributions if their employment ends before Centene's contributions vest, unless they return before a five-year break in service. *Id.*; Plan § 3.04. The "forfeitures" do not leave the Plan. Rather, Plan Section 11.09 provides that the forfeitures "*may* be used to pay administrative expenses, if so directed by the Administrator," but otherwise "*shall* be applied to reduce the contributions of the Employer . . . ." (emphases added).[6] Plan Section 19.05 addresses Plan expenses and provides that "[a]ll such costs and expenses paid from the remaining Trust Fund shall, unless allocable to the Accounts of particular Participants, be charged against the Accounts of all Participants as directed by the Administrator."

Plaintiff alleges Centene is the Plan sponsor and administrator, Fidelity Investments ("Fidelity") is the Plan's recordkeeper, and Strategic Advisors provides elective managed account services to enrolled Plan participants. AC ¶¶ 13-18. The Plan offers a diverse investment lineup to enable participants to build appropriate portfolios aligned with their retirement time horizon and risk tolerance. The Freedom Blend CITs are the Plan's target-date funds and default investment for participants who do not select their own investments. AC ¶ 21.

**STANDARD OF REVIEW**

Motions to dismiss in ERISA class actions are an "important mechanism" to weed out meritless claims. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). To survive a

---

[5] Two versions of the Plan have been in effect during the relevant time period: one effective until July 15, 2021 (**Ex. 5**) and another effective after that date (**Ex. 6**, "Plan"). The Court may consider documents central to and referred to in a complaint, including plan documents, where "Plaintiff's claims necessarily rely on [the document's] terms." *Nguyen v. Westlake Servs. Holding Co.*, 2024 WL 694909, at *1 n.1 (C.D. Cal. Feb. 5, 2024) (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)); *see also McWashington*, 2025 WL 1736765, at *2-3.

[6] Prior to July 15, 2021, Section 11.09 read as follows:
> Any forfeitures occurring during a Plan Year *shall be applied to reduce the contributions of the Employer*. Notwithstanding any other provision of the Plan to the contrary, forfeitures shall first be used to pay administrative expenses under the Plan, *if so directed by the Employer*. To the extent that forfeitures are not used to reduce administrative expenses under the Plan, as directed by the Employer, forfeitures will be applied in accordance with this Section 11.09.

**Ex. 5**, § 11.09 (emphases added).

Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient allegations "to raise a right to relief above the speculative level," and "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A plausible claim requires more than conclusory allegations and assertions devoid of factual support: it must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(1) motion to dismiss, a plaintiff must allege facts demonstrating (1) "an injury in fact" that (2) was "likely caused by" the defendant and (3) "would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). A statutory violation, without more, is insufficient to demonstrate standing. *Id.* at 426-27. Courts "must" dismiss lawsuits that allege statutory violations, including prohibited transactions, "but fail to identify an injury." *Cunningham*, 604 U.S. at 708.

## ARGUMENT

### I.    Plaintiff's Forfeiture Claims Fail.

The Court should dismiss Plaintiff's forfeiture claims with prejudice because, as dozens of courts have now held, they are fatally flawed and contrary to decades of approval by Congress, the DOL, and the Treasury. *See Hernandes*, 2025 WL 3208360, at *4-6 (identical forfeiture claims "rest on a misinterpretation of the Plan's terms and a novel legal theory that is unsupported by present law"); *Armenta*, 2025 WL 2645518, at *3-6; *supra* n.1.

#### A.    Plaintiff fails to state a breach of fiduciary duty claim (Count II).

##### 1.    Plaintiff fails to allege a failure to follow the Plan's terms.

A plan fiduciary violates ERISA Section 404(a)(1)(D) by failing to act "in accordance with the documents and instruments governing the plan." Plaintiff does not—and cannot—contend that the Plan document mandated Centene to allocate forfeitures to Plan expenses. She admits that Section 11.09 granted Centene discretion to decide whether or not to allocate forfeitures to expenses. AC ¶ 44. She simply takes issue with the choice Centene made. Thus, to the extent Plaintiff alleges a failure to follow the Plan document, that claim plainly fails. *See, e.g.*, *Armenta*, 2025 WL 2645518, at *4; *Dimou*, 2024 WL 4508450, at *9.

*2.        Plaintiff fails to allege a breach of the duty of loyalty or prudence.*

Plaintiff alleges Centene breached its duties of loyalty and prudence (ERISA Sections 404(a)(1)(A), (B)) by allocating forfeitures to contributions because this allegedly caused an "out-of-pocket payment of administrative fees" that "should have been eliminated by the forfeited funds." AC ¶ 48. Plaintiff's conclusory allegations fail to state a claim, as DOL has explained and numerous courts have held. *See supra* n.1, n.2.

*First*, Plaintiff claims Centene should have used forfeitures to provide her and other participants with benefits the Plan did not promise—*i.e.*, payment of the Plan's expenses. While the Plan provides the *option* to pay expenses with forfeitures, it *directs* (and has always directed) that forfeitures "shall" be used to fund contributions. *See supra* at 3. ERISA "protect[s]" only "contractually defined benefits," *U.S. Airways, Inc. v. McCutchen*, 569 U.S. 88, 100 (2013), and it does not "create an exclusive duty to maximize pecuniary benefits." *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004); *see also Wright*, 2025 WL 1683642, at *5. Plaintiff does not—and cannot—allege that participants did not receive their contractually defined benefits under the Plan. And, as numerous courts have held, when a Plan affords discretion regarding the use of forfeitures, ERISA does not require fiduciaries to allocate forfeitures to expenses because such a "reading of the Plan would require defendants to provide Plan participants with <u>more</u> benefits than the Plan documents set out" and "ERISA does not authorize plan fiduciaries to do that." *Jacob*, 2026 WL 173228, at *7; *see also Cain*, 2025 WL 2172684, at *4; *Dimou*, 2024 WL 4508450, at *9. Stated simply, Plaintiff's forfeiture theory "is simply not the law." *Hernandes*, 2025 WL 3208360, at *4 (dismissing loyalty and prudence forfeiture claims). Accordingly, because Centene was not required to allocate the Plan's forfeitures in Plaintiff's preferred manner, she fails to state a fiduciary breach claim. *See, e.g.*, *Armenta*, 2025 WL 2645518, at *4; *Hutchins v. HP, Inc.*, 737 F. Supp. 3d 851, 863 (N.D. Cal. 2024) ("*Hutchins I*"); *Sievert*, 780 F. Supp. 3d at 877; *Middleton*, 2025 WL 2229959, at *14; *Cain*, 2025 WL 2172684, at *4; *Dimou*, 2024 WL 4508450, at *9.

*Second*, Plaintiff's fiduciary breach claims fail because they contravene the "settled understanding of Congress and the Treasury Department," *Hutchins I*, 737 F. Supp. 3d at 862-63, and because they "contravene[] ERISA and decades of settled precedent." *Hernandes*, 2025 WL 3208360, at *4 (quoting *Wright*, 2025 WL 1683642, at *4); *Dimou*, 2024 WL 4508450, at *9; *Sievert*, 780 F. Supp. 3d at 878; *Armenta*, 2025 WL 2645518, at *5. As courts dismissing identical forfeiture claims have recognized, "[t]he Treasury Department has issued long-standing reports and regulations that 'indicate that forfeitures in defined contribution plans may be used to reduce future employer contributions.'" *Armenta*, 2025 WL 2645518, at *5 (quoting *Sievert*, 780 F. Supp. 3d at 878). Treasury also recently proposed a new regulation reaffirming that forfeitures may be used to "reduce employer contributions under the plan." 88 Fed. Reg. 12282, 12285 (Feb. 27, 2023). Plaintiff's theory is also undermined by the fact that, since ERISA was enacted in 1974, Congress, Treasury, and DOL have never sought to prohibit allocating forfeitures to contributions. *See Hutchins II*, 767 F. Supp. 3d at 922-23.[7] In light of this, a plaintiff must "plead something more than an ordinary use of forfeited funds to pay future employer contributions, or in other words, behavior that is not consistent with the practices of perhaps all 401(k) plan fiduciaries." *McWashington*, 2025 WL 1736765, at *14.

*Third*, Plaintiff's prudence claim independently fails because she does not plead any nonconclusory allegations of imprudence. "To plead a breach of the duty of prudence under ERISA, a plaintiff must plausibly allege fiduciary decisions outside a range of reasonableness," which will "depend on the circumstances prevailing at the time the fiduciary acts." *Hughes v. Nw. Univ.*, 63 F.4th 615, 630 (7th Cir. 2023) (internal quotation marks omitted). Because Plaintiff does not allege anything about Centene's process, let alone facts plausibly demonstrating imprudence, she improperly retreats to a *per se* rule. *See, e.g.*, AC ¶ 73 (alleging that, by allocating forfeitures

---

[7] Plaintiff makes a stray remark that Centene, in "violation of IRS regulations," maintained a balance in the Plan's forfeiture account each year. AC ¶ 6. Plaintiff notably does not identify the alleged "IRS regulations" and there is no support for her assertion, as well-reasoned case law and proposed Treasury regulations contradict her conclusory position. *See, e.g.*, *Donelson*, 2025 WL 3754241, at *5; 88 Fed. Reg. at 12284 (contemplating use of forfeitures up to twelve months after the plan year in which they are incurred).

to contributions even where the Plan permitted that choice, Centene "breached its duty of prudence"). In so doing, Plaintiff ignores a fiduciary's additional relevant considerations, including "ensur[ing] the participants timely received the [company] contributions they were owed under the Plan." **Ex. 1** at 22. Plaintiff also incorrectly assumes that had forfeitures been allocated to Plan expenses, Centene necessarily would have increased (or could have been compelled to increase) its contributions. *Id.* at 18 (DOL explaining this assumption "misunderstands the boundary between settlor and fiduciary functions"). For good reason, DOL and numerous courts have rejected these conclusory allegations of imprudence. *See id.* at 17.[8]

*Finally*, Plaintiff's loyalty claim independently fails because, "[a]s nearly every court to address this question has concluded, when (1) a plan document gives a plan fiduciary discretion in how to use forfeitures and (2) participants otherwise receive everything guaranteed by the plan's terms, plan fiduciaries do not violate their duty of loyalty merely by declining to use forfeitures to cover administrative expenses." *Polanco*, 2025 WL 3003060, at *4 (collecting cases). This is exactly the situation here. As described above, Section 11.09 expressly authorized Centene to allocate forfeitures to contributions. *See supra* at 3. Accordingly, Plaintiff's loyalty claim fails because Centene indisputably "complied with the Plan's lawful terms" and provided participants "with their benefits due." *Wright*, 360 F.3d at 1100; *see also Polanco*, 2025 WL 3003060, at *7-8; *Sievert*, 780 F. Supp. 3d at 878; *see also* **Ex. 1** at 15.

### 3.    *Plaintiff does not allege a loss to the Plan.*

Plaintiff's fiduciary breach claims fail for the additional reason that she does not—and cannot—allege a loss to the Plan. *See Mathews v. Chevron Corp.*, 362 F.3d 1172, 1187 (9th Cir. 2004). Plaintiff claims Centene's allocation of forfeitures to contributions resulted in "the out-of-pocket payment of millions in administrative fees deducted directly from [participants'] individual accounts." AC ¶ 48. Plaintiff misunderstands loss under ERISA. *First*, she does not allege that allocating forfeitures to contributions *reduced* the Plan's assets. *See, e.g.*, *id.* ¶¶ 48, 63. The

---

[8] *See McWashington*, 2025 WL 1736765 (Plaintiffs' *per se* theory "runs contrary to the principle that the content of the duty of prudence turns on the circumstances prevailing at the time the fiduciary acts"); *see also Wright*, 2025 WL 1683642, at *5; *Hutchins II*, 2025 WL 404594, at *5.

forfeitures never left the Plan, so there was no "loss." *Second*, Plaintiff appears to assume that Centene would have increased its contributions if the forfeitures had been allocated to Plan expenses, but her assumption is unsupported by any legal theory or factual allegations. As DOL recently explained, if a plan fiduciary decides to allocate forfeitures to plan expenses instead of contributions, nothing in ERISA requires the plan sponsor to increase its contributions to make up for the deficit. *See* **Ex. 1** at 17-18. Because Plaintiff does not allege the Plan's participants did not receive the benefits to which they were entitled, she fails to state a claim.

### B.      Plaintiff fails to state a forfeiture prohibited transaction claim (Count I).

Plaintiff's forfeiture prohibited transaction claim also fails, as nearly every court to address this claim has held. *E.g.*, *Hutchins II*, 767 F. Supp. 3d at 927-28; *Hernandes*, 2025 WL 3208360, at **5-6; *Dimou*, 2024 WL 4508450, at *11; *Wright*, 2025 WL 1683642, at *6; *Steen*, 2025 WL 2420725, at *7; *Liao v. Fisher Asset Mgmt., LLC*, 2024 WL 4351869, at *5 (N.D. Cal. Sep. 30, 2024). Plaintiff challenges Centene's decision to allocate the Plan's forfeitures to other Plan participants' accounts in the form of contributions. AC ¶¶ 44-48. This intra-Plan allocation of forfeitures is not a "transaction." *Hernandes*, 2025 WL 3208360, at *6 ("Hernandez fails to state a claim for prohibited transactions within the meaning of § 1106 because he does not allege a prohibited 'transaction' or that the forfeited funds were used in a prohibited manner."); *Armenta*, 2025 WL 2645518, at *6-7; *Curtis*, 2026 WL 124323, at *3; *Dimou*, 2024 WL 4508450, at *11; *Wright*, 360 F.3d at 1101. Accordingly, Plaintiff's prohibited transaction claim fails.

### C.      Plaintiff's anti-inurement claim fails (Count III).

Plaintiff's anti-inurement claim is also fatally flawed. She claims Centene violated ERISA's anti-inurement provision, 29 U.S.C. § 1103(c)(1), because Centene's allocation of forfeitures to contributions "had the economic effect of diverting Plan assets to the employer's benefit." AC ¶ 84. This is not true for the reasons discussed above. *See supra* at 5-8. The claim also fails because, as numerous courts and DOL have explained, anti-inurement claims require the *removal* of assets from a plan and not merely the reallocation of the assets within a plan (as is the

case with forfeitures). *See, e.g.*, *Hutchins I*, 737 F. Supp. 3d at 866; *Wright*, 2025 WL 1683642, at *6; **Ex. 2**, at 7 n.1.[9] Plaintiff does not allege the forfeitures left the Plan, so her claim fails.

**II.     Plaintiff's Challenge To The Freedom Blend CITs Fail.**

In a brazen attempt to take advantage of the Supreme Court's decision in *Cunningham*, AC ¶ 23, Plaintiff adds a frivolous challenge to the Freedom Blend CITs, which is the *lower cost* CIT version of the Fidelity Freedom Blend target-date funds ("TDFs"). Like other TDFs and their mutual fund version counterparts, the Freedom Blend CITs are invested in a diverse portfolio of equity and fixed income instruments that become more conservative over time as the participant approaches retirement. *See* Freedom Blend CITs Fact Sheet (Dec. 31, 2025), https://tinyurl.com/2e2ms774. Tellingly, Plaintiff does *not* allege the Freedom Blend CITs underperformed or were too costly. In other words, she does not allege that the CITs harmed her in any way. Her claims are baseless.

**A.     Plaintiff's *per se* challenge to CITs in 401(k) plans fails (Count II).**

Plaintiff's CIT challenge begins with the nonsensical claim that it is a *per se* breach of fiduciary duty for a 401(k) plan to offer CITs because they are allegedly "structurally opaque" and not subject to the same SEC requirements as mutual funds. AC ¶ 24. Plaintiff ignores the comprehensive statutory and regulatory scheme governing CITs, the DOL's recognition of CITs as common 401(k) plan investments, and the ***trillions of dollars*** of 401(k) plan assets invested in CITs across the country.

CITs are pooled investment portfolios maintained by banks or trust companies supervised by federal or state authorities that are designed and available exclusively for qualified retirement plans. *See Wildman v. Am. Century Servs.*, 362 F. Supp. 3d 685, 692 n.6 (W.D. Mo. 2019). Because they are not offered to retail investors, CITs are subject to rules and regulations promulgated by the DOL, the IRS, and the Office of the Comptroller of the Currency ("OCC") or state banking

---

[9] Plaintiff also says that using forfeitures for expenses would have forced Centene to contribute "new Plan assets," which means Centene "retained" the forfeitures. AC ¶ 84. Plaintiff has not—and cannot—proffer any support for this self-serving assertion. More to the point, ERISA's anti-inurement clause only covers existing plan assets, not hypothetical future plan assets.

DEFENDANT CENTENE CORPORATION'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED CLASS ACTION COMPLAINT; CASE NO. 3:25-CV-09743-RFL

regulators. *See Baird v. BlackRock Inst. Tr. Co.*, 403 F. Supp. 3d 765, 771 (N.D. Cal. 2019); *Investor.gov*, Collective Investment Trust, https://tinyurl.com/bns5er8z. Notably, when a 401(k) plan invests in a CIT, the underlying assets in the CIT are considered "plan assets" under ERISA. *See* 29 C.F.R. § 2510.3-101(h)(1). This means that the CIT trustee and any subadvisors who exercise discretionary control over the CIT's assets are subject to ERISA's fiduciary requirements with respect to those assets, providing additional layers of fiduciary protection to 401(k) plan participants. *See* ERISA § 3(21); DOL Advisory Opinion 1996-15A (Aug. 7, 1996), https://tinyurl.com/mfaa63f.[10] CITs are also subject to ERISA's fee and investment disclosure regulations. *See* 29 C.F.R. §§ 2550.404a-5 and 2550.408b-2. In addition, CITs are subject to reporting, valuation, and other requirements under applicable OCC regulations or state trust laws. *See* 12 C.F.R. § 9.18; N.H. Rev. Stat. § 564-B:1-101 *et seq*.

Plaintiff's *per se* claim fails because it is premised on the argument that plans may only offer mutual funds. This is refuted by the long history of 401(k) plans investing in CITs. In a 2019 publication, DOL specifically identified CITs (along with mutual funds) as one the four "common investments" in 401(k) plans.[11] And according to Morningstar, target-date CITs held more than ***$2.5 trillion*** in assets as of December 31, 2025, representing 54% of all assets held in target-date funds.[12] DOL also recently issued an advisory opinion addressing how a lifetime income annuity option could be incorporated into a CIT offered in a 401(k) plan.[13] This is fatal to Plaintiff's claim.[14] *See also Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1074-75 (N.D. Cal. 2017)

[10] This contrasts with ERISA's treatment of mutual funds, which are not plan asset investment vehicles. Mutual fund managers are not ERISA fiduciaries to their retirement plan investors. *See* U.S. DOL Advisory Op. 2009-04A (Dec. 4, 2009), https://tinyurl.com/muc228ed.

[11] DOL, *A Look at 401(k) Plan Fees*, at 4-5, https://tinyurl.com/354v97ms ("401(k) Plan Fees").

[12] *See* Morningstar, *Target-Date Funds Continue Their Rapid Rise* (Mar. 11, 2026), https://tinyurl.com/yv37d7bt.

[13] *See* DOL Advisory Opinion 2025-04A (Sep. 23, 2025), https://tinyurl.com/58skb3hp.

[14] ERISA plaintiffs have also filed dozens of lawsuits in recent years alleging that the failure to switch from a mutual fund to a CIT was a fiduciary breach. *See, e.g.*, *Davis v. Salesforce.com, Inc.*, 2022 WL 1055557, at *2 (9th Cir. Apr. 8, 2022); *Tobias v. NVIDIA Corp.*, 2021 WL 4148706, at *3, *12 (N.D. Cal. Sep. 13, 2021).

(rejecting similar *per se* challenge to common trusts in a 401(k) plan because of their alleged opacity and different regulatory requirements than mutual funds).

**B.    Plaintiff lacks standing to challenge the Freedom Blend CITs.**

Plaintiff's challenge to the Freedom Blend CITs also fails because she lacks Article III standing. Other than her baseless *per se* challenge (discussed above), Plaintiff simply alleges that it was a prohibited transaction to switch from the mutual fund to the CIT version of the Freedom Blend CITs. *See* AC ¶¶ 66-67. But Plaintiff does not allege she suffered any investment losses from or was otherwise harmed by the Plan's offering of the lower cost Freedom Blend CITs. Instead, she generically asserts that CITs potentially "allow for the extraction of unverified indirect compensation." *Id.* ¶ 68. Plaintiff's conclusory allegations are another baseless *per se* criticism of CITs generally and a thinly veiled attempt to take advantage of *Cunningham*. Her assertions are exactly the kind of "barebones" allegations the Supreme Court warned about when it acknowledged the "serious concerns" of "meritless" prohibited transaction claims. 604 U.S. at 707-08. The Court thus instructed lower courts to "dismiss suits that allege a prohibited transaction occurred but fail to identify an injury." *Id.* Because Plaintiff does not—and cannot—allege she was harmed by Centene's decision to offer the Freedom Blend CITs, she lacks standing.

**C.    Plaintiff's prohibited transaction claim fails (Count I).**

Plaintiff alleges that offering the Freedom Blend CITs was a prohibited transaction. AC ¶¶ 65-69. This claim fails at the outset because Plaintiff does not identify a "transaction" Centene allegedly caused the Plan to engage in, which is required to plead a prohibited transaction claim. *Tibble v. Edison Int'l*, 639 F. Supp. 2d 1122, 1126 (C.D. Cal. 2009) ("The first element of such a claim is that there must be a 'transaction'") (*quoting Lockheed v. Spink*, 517 U.S. 882, 892-93 (1996)).

While not plausibly alleged, the only possible "transaction" referenced in the Amended Complaint was Centene "placing" the Freedom Blend CITs on the Plan's investment menu. *See* AC ¶ 22; *id.* ¶ 69 (challenging decision to "structure[e] the menu to funnel assets into" the Freedom Blend CITs). But this claim is time barred under ERISA's six-year statute of repose, 29 U.S.C.

§ 413(1), *and* its three-year statute of limitations, *id.* § 413(2). The Plan's Forms 5500—which are publicly available and referenced in the Amended Complaint, AC ¶ 23—show that the Plan has offered the Freedom Blend CITs since *2016*.[15] Plaintiff did not challenge the Freedom Blend CITs until she filed her Amended Complaint almost ten years later on *February 13, 2026*.[16] Her claim is time barred under 29 U.S.C. § 413(1).

Plaintiff's claim is also time barred under 29 U.S.C. § 413(2), which provides a shorter three-year statute of limitations when "the plaintiff has actual knowledge of" the alleged ERISA violation. For prohibited-transaction claims, "the plaintiff need only be aware that the defendant has engaged in a prohibited transaction." *Sulyma v. Intel Corp. Inv. Pol'y Comm.*, 909 F.3d 1069, 1075 (9th Cir. 2018), *aff'd*, 589 U.S. 178 (2020); *Lalonde v. Mass. Mut. Ins.*, 728 F. Supp. 3d 141, 151-52 (D. Mass. 2024) (dismissing prohibited transaction claim as time-barred). Plaintiff alleges she was a Plan participant and that she invested in the Freedom Blend CITs during the putative class period. *Id.* ¶ 11. She thus had "actual knowledge" the Freedom Blend CITs were a Plan investment during the putative class period, but waited until February 2026 to challenge them.[17]

### D.    Plaintiff fails to plead an ERISA Section 406(b)(1) claim (Count I).

Plaintiff does not—and cannot—state an ERISA Section 406(b)(1) claim with respect to the Freedom Blend CITs. That section prohibits a fiduciary from "deal[ing] with the assets of the plan in *his* own interest or for *his* own account." 29 U.S.C. § 1106(b)(1) (emphasis added). Plaintiff proclaims Centene engaged in "self-dealing" by offering the Freedom Blend CITs but alleges no *facts* plausibly establishing that Centene acted in its "own interest" or for its "own account" by switching from the mutual fund to the lower-cost CIT version of the Freedom Blend TDFs. AC ¶ 69. Instead, Plaintiff simply asserts (falsely) that the Freedom Blend CITs "generate[d] indirect

---

[15] **Ex. 7**, at 3. Plaintiff also received annual disclosures about the Plan's investments, including their performance, benchmarks, and expense ratios. *See* 29 C.F.R. § 2550.404a-5.

[16] Plaintiff's CIT claims do not relate back to the filing of the original complaint in November 2025 because they do not arise out of the same conduct, transaction, or occurrence challenged in the original complaint (which focused only on forfeitures and administrative expenses). Fed. R. Civ. P. 15(c)(1)(B). Her CIT claims are time-barred regardless.

[17] While Plaintiff's allegations establish her actual knowledge, she began investing in the Freedom Blend CITs in March 2022, almost four years before she filed the Amended Complaint.

revenue sharing" for Fidelity. *Id.*[18] Even if this assertion were true—it is not—offering plan investments that provide revenue sharing is a "common" industry practice and is not a basis for a Section 406(b)(1) claim. *Collins v. Ne. Grocery, Inc.*, 2025 WL 2383710, at *5 (2d Cir. Aug. 18, 2025); *Peeler v. Bayada Home Health Care, Inc.*, 2026 WL 208630, at *14 (W.D.N.C. Jan. 27, 2026); *Cho v. Prudential Ins.*, 2021 WL 4438186, at *13 (D.N.J. Sep. 27, 2021). Accordingly, because Plaintiff fails to allege any facts suggesting Centene acted in its own self-interest, her claim fails. *See Piercy v. AT&T Inc.*, 2025 WL 2505660, at *48 (D. Mass. Aug. 29, 2025) (Section 406(b)(1) claim failed because the plaintiffs did not point "to anything in the transaction itself that suggests self dealing"); *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1465–66 (9th Cir. 1995) ("the transaction, itself, should communicate the breach").

**III.    Plaintiff's Administrative Fee Claims Fail.**

**A.    Plaintiff lacks standing to challenge the Plan's managed account offering.**

Plaintiff alleges Centene breached its fiduciary duties by allegedly "allowing excessive administrative expenses" to be paid to Fidelity and Strategic Advisors. AC ¶ 72. Plaintiff admits the Plan's managed account offering from Strategic Advisors is a voluntary service with "separate optional fees" for enrolled participants. AC ¶ 33. Plaintiff does not—and cannot without making misrepresentations to the Court—allege she ever enrolled in a managed account or paid any managed account fees.[19] Plaintiff therefore was not harmed by any fees paid to Strategic Advisors, and she lacks Article III standing to challenge the Plan's managed account offering. *See Guyes*, 2022 WL 18106384, at *5; *see also Collins v. Ne. Grocery, Inc.*, 149 F.4th 163, 171-74 (2d Cir. 2025) (dismissing claims challenging plan investments and fees where the plaintiffs failed to allege an "individual injury"); *McWhorter v. Serv. Corp. Int'l*, 748 F. Supp. 3d 459, 469-70 (S.D. Tex. 2024) (same and collecting cases).

---

[18] As shown in the Plan's Forms 5500 (Schedule C), Fidelity did not receive *any* revenue sharing from the Freedom Fund CITs. *See, e.g.*, **Ex. 8**, at 4-7; **Ex. 12**, at 4-9.

[19] Plaintiff was invested in the 2015 vintage of the Freedom Blend CITs. AC ¶¶ 11, 17.

**B.      Plaintiff fails to allege a fiduciary breach (Count II).**

*1.      Plaintiff cannot state a duty of prudence claim.*

A prudence claim requires plausible allegations that a fiduciary did not act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). "[T]he appropriate inquiry will necessarily be context specific," *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014), and focuses on the "fiduciary's conduct" in arriving at a decision, "not on its results," *Wehner v. Genetech, Inc.*, 2021 WL 507599, at *4 (N.D. Cal. Feb. 9, 2021) (internal quotations omitted). The question at the pleading stage is "whether Plaintiff's circumstantial factual allegations permit the Court to reasonably infer from what is alleged that the process [of managing the Plan's fees] was flawed." *Humphries v. Mitsubishi Chem. Am., Inc.*, 2024 WL 4711296, at *8 (S.D.N.Y. Nov. 7, 2024) (alterations in original) (internal quotations omitted); *Wehner*, 2021 WL 507599, at *4. They do not. As explained above, another federal court recently examined—and dismissed with prejudice—similar excessive fee allegations against Centene. *See Williams*, 2023 WL 2755544, at *4-5. The allegations here are even less plausible than in *Williams*.

Plaintiff's prudence claim rests on the flawed premise that an imprudent process can be inferred any time a plan incurs fees that are allegedly higher than a hand-picked set of comparator plans. But looking at fees in a vacuum, unconnected to the underlying services provided, reveals nothing about a fiduciary's process and does not plausibly suggest imprudence or point to a fiduciary breach.[20] *See Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013). Indeed, "[f]ederal courts sitting in California have held that a plaintiff must plead administrative fees that are excessive in relation to the *specific* services the recordkeeper provided to the *specific* plan at issue." *Wehner*, 2021 WL 507599, at *5 (N.D. Cal. Feb. 9, 2021); *Tobias*, 2021 WL 4148706, at *15. Plaintiff's

---

[20] *See, e.g.*, *401(k) Plan Fees*, at 9 (emphasizing "all services have costs" and "don't consider fees in a vacuum").

allegations—which provide no detail about the specific services provided to the Plan or any of her comparator plans—fall woefully short of this standard.

For each year from 2019 to 2023, Plaintiff only identifies *three* allegedly "comparable plans" that she claims paid "substantially less in administrative fees" to Fidelity and Strategic Advisors. AC ¶ 32. Even a cursory review of those plans' Forms 5500 shows they are not meaningful benchmarks. For example, from 2019 to 2023, the Plan held between $2.1 and $4 billion in assets, **Ex. 8**, at 12; **Ex. 12**, at 11, while the Disney plan held over $12 billion in assets. **Ex. 14**, at 12. And the Providence Health plan is a 403(b) plan, not a 401(k) plan. *See* **Ex. 15**, at 7. Plaintiff also does not allege anything about the type, scope, or complexity of services her comparator plans received. Instead, she relies entirely on the conclusory assertion that the comparator plans all received "the exact same core recordkeeping services." AC ¶ 37. This is both inaccurate and insufficient to state a claim. *Wehner*, 2021 WL 507599, at *4-6 (dismissing excessive fees claim where complaint failed to allege "sufficient circumstantial facts" of "apples-to-apples" plans); *Williams*, 2023 WL 2755544, at *5; AC ¶ 37. In addition to their material differences in size and type, Plaintiff's comparator plans reported receiving different recordkeeping and administrative services during the putative class period. In the Form 5500s on which Plaintiff relies, plans report the services they received using approximately fifty "service codes."[21] For example, in 2019, the Disney plan listed five service codes for Fidelity, **Ex. 14**, at 7, while the Plan and the CBRE 401(k) Plan listed only four, **Ex. 8**, at 6; **Ex. 16**, at 5.

To make matters worse, Plaintiff conflates and bundles together two discrete sets of services: recordkeeping services and elective-managed account services, *see supra* at 13. Specifically, Plaintiff estimates the Plan's and the comparator plans' "recordkeeping and administrative costs" by combining the Form 5500-reported direct compensation paid to Fidelity for its recordkeeping and other administrative services *and* the fees paid to Strategic Advisors by

---

[21] *See* IRS, 2023 Form 5500 Instructions, at 30, https://tinyurl.com/9z8nan7b (listing codes for recordkeeping and other services). Because the Forms 5500 (and the service codes within those Forms) are incorporated by reference into the Amended Complaint, the Court can take judicial notice of them. *See supra* n.5.

participants enrolled in the optional managed account service.[22] AC ¶¶ 31-32; *see, e.g.*, **Exs. 8-12**, at 6. While fees for essential recordkeeping services are allocated to all participants, *Wehner*, 2021 WL 507599, at *5, managed account fees are allocated *only* to the enrolled participants who pay "to have [the] provider invest [their] account in a portfolio of preselected investment options." *Guyes v. Nestle USA, Inc.*, 2022 WL 18106384, at *4 (E.D. Wisc. Nov. 21, 2022); *see also* **Ex. 13**, at 8 (enrolled participants "will incur an advisory fee for the Service"). Plaintiff bundles these different fees together and divides them by the total number of participants in the plans. But this ignores the obvious fact that there are different numbers of participants enrolled in each plan's managed account service, which result in different *total* amounts paid by each plan for their managed account service. Plaintiff's flawed math assumes that the difference in total amounts paid equates to higher or lower per participant fees, when the difference plainly results, at least in part, from higher or lower participant *counts*. Plaintiff is thus comparing apples and oranges. *See Wehner*, 2021 WL 507599, at *4-6.

Plaintiff's fee comparisons are further undermined by the fact that her comparator plans do not identify Fidelity or Strategic Advisors as a service provider in their Forms 5500 for some years. For those years, Plaintiff creates a false narrative by comparing her (faulty) estimate of the Plan's combined fees to Fidelity *and* Strategic Advisors with the fees the comparator plans paid only to Fidelity *or* Strategic Advisors. *Compare* **Exs. 8-12**, at 6 (both providers) *with* **Ex. 15**, at 4-5, 10-11 (only Strategic Advisors); **Ex. 14**, at 4, 7, 10 (only Fidelity). On top of that, Plaintiff ignores the individualized transaction fees included in the direct compensation amounts paid to Fidelity that—like the managed account fees—were paid only by the participants engaging in the transactions (e.g., withdrawals, loans, QDROs). **Ex. 13**, at 17, 20-21; *401(k) Plan Fees*, at 3.

---

[22] For example, Plaintiff estimates the Plan paid $50 in "per participant administrative costs" in 2019, AC ¶ 31, which she appears to calculate by dividing the direct compensation paid to Fidelity *and* Strategic Advisors (~$2.3 million) by the number of participants with a year-end balance (45,534). **Ex. 8** at 3, 6.

Finally, the Amended Complaint again ignores the additional *indirect compensation* that only Plaintiff's comparator plans paid to Fidelity.[23] Plaintiff's sole response is her self-serving statement that "even when accounting for revenue sharing in comparator plans . . . Centene's total fee burden remained wildly excessive." AC ¶ 38. The Court should reject this conclusory assertion, as Plaintiff tellingly says nothing about the amount of indirect compensation paid by her comparator plans. Even putting aside the other fatal flaws with her prudence claim, Plaintiff's deliberate disregard for the full scope of compensation her comparator plans paid to Fidelity and Strategic Advisors undermines her entire claim. *See, e.g.*, *Garnick v. Wake Forest Univ. Baptist Med. Ctr.*, 629 F. Supp. 3d 352, 363-64 (M.D.N.C. 2022) ("apples-to-oranges" comparison where plaintiff compared direct and indirect compensation against only direct compensation). Plaintiff's prudence claim should be dismissed.

### 2.    *Plaintiff's duty of loyalty claim fails.*

Plaintiff's loyalty claim fares no better. She simply concludes Centene was disloyal by retaining Fidelity and its "affiliates" for various services to the Plan and "by allowing excessive administrative expenses to be incurred," AC ¶¶ 28-30, 72-73, without pleading facts plausibly suggesting that Centene acted in its own self-interest or with an improper motive with respect to the Plan's expenses. *Tobias*, 2021 WL 4148706, at *16; *White v. Chevron Corp.*, 2017 WL 2352137, at *6 (N.D. Cal. May 31, 2017). Nor does Plaintiff proffer any allegations differentiating her loyalty claim from her prudence claim. *See Wehner*, 2021 WL 507599, at *10 (dismissing loyalty claim where plaintiff failed to "differentiate" between loyalty and prudence claims or "include separate allegations that would permit an inference" of disloyalty); *White*, 2017 WL 2352137, at *6-7; *Guyes*, 2022 WL 18106384, at *6; *Tobias*, 2021 WL 4148706, at *16. Plaintiff

---

[23] For example, the CBRE plan 2023 Form 5500 states that "[r]evenue sharing was first used to pay the fees of Fidelity and its affiliates aggregating to $1,552,135 . . . in 2023 . . . ." **Ex. 16**, at 8. By using Plaintiff's math and including this $1.55 million the CBRE plan paid Fidelity through revenue sharing, the CBRE plan's fees increase from $21 to $57 per participant, which exceeds Plaintiff's estimates of the Plan's fees every year. AC ¶¶ 31-32.

simply asserts that Centene was disloyal "by allowing excessive administrative expenses to be incurred." AC ¶¶ 72-73. This is insufficient to state a loyalty claim.[24]

### C. Plaintiff fails to allege a prohibited transaction with respect to the Plan's recordkeeping and administrative services (Count I).

#### 1. Plaintiff lacks Article III standing.

Plaintiff's prohibited transaction claim premised on the Plan's recordkeeping and administrative services fails at the outset because she lacks Article III standing. Plaintiff alleges Centene engaged in a prohibited transaction because it "paid fees from Plan assets to fiduciary and/or parties in interest." AC ¶ 63. Simply alleging a payment to a fiduciary or a party in interest does not establish a requisite injury for Article III standing purposes. *Cunningham*, 604 U.S. at 708. Rather, a plaintiff must plausibly allege she suffered a cognizable injury from the alleged prohibited transaction. *Id.* Plaintiff fails to do so.

Prohibited transaction claims "generally involve uses of plan assets that are potentially harmful to the plan." *Spink*, 517 U.S. at 893. Plaintiff does not allege any such uses. In yet another attempt to take advantage of *Cunningham*, Plaintiff attacks the Plan's necessary and routine service provider arrangements as a *per se* prohibited transaction without alleging a cognizable injury. Notably, Plaintiff's challenge to Fidelity's recordkeeping services conflicts with ERISA's, DOL's, and myriad courts' recognition that recordkeeping services are necessary and essential. *See, e.g.*, 29 U.S.C. § 1059 (imposing specific recordkeeping requirements on plan sponsors); *401(k) Plan Fees*, at 3; *Pizarro v. Home Depot, Inc.*, 634 F. Supp. 3d 1260, 1272 (N.D. Ga. 2022), *aff'd*, 111 F.4th 1165 (11th Cir. 2024), *petition for cert. dismissed*, No. 24-620 (U.S. Jan. 15, 2026) ("It is undisputed that recordkeeping services were necessary."). In fact, Plaintiff's own allegations disprove any claim that the Plan's receipt of services from Fidelity or Strategic Advisors was "potentially harmful" because her so-called "comparable plans" did the same thing. *Id.* Plaintiff also does not—and cannot—plausibly allege the Plan overpaid for those services. *Supra* at 13-17.

---

[24] To the extent Plaintiff alleges Centene failed to follow the Plan's terms with respect to recordkeeping or administrative services, AC ¶ 74, which is unclear, she pleads nothing to support the claim and it fails for the reasons described above. *See supra* at 4-5.

And, once again, because Plaintiff never enrolled in the Plan's managed account offering, *id.* at 13, she lacks standing to challenge that arrangement as a prohibited transaction.

### 2.    *Plaintiff's prohibited transaction claim is time-barred.*

Plaintiff's prohibited transaction claim challenging the Plan's service arrangements is time-barred for the same reasons as her challenge to the Freedom Blend CITs. *See supra* at 11-12; *Lalonde*, 728 F. Supp. 3d at 151-52. Plaintiff alleges she was a Plan participant during the putative class period and that Fidelity and Strategic Advisors provided services to the Plan since at least 2019. *See* AC ¶¶ 11, 31. This establishes her knowledge of the alleged prohibited transaction. Because Plaintiff did not file this lawsuit until November 2025, her prohibited transaction claim challenging the Plan's arrangement with Fidelity and Strategic Advisors is time-barred.

### 3.    *Plaintiff fails to state any prohibited transaction claim.*

Plaintiff also fails to plausibly allege the elements of a prohibited transaction under ERISA Section 406(b)(1) or 406(a)(1). Plaintiff simply concludes Centene was "engaging in prohibited transactions" under Section 406(b)(1) by retaining and paying fees to Fidelity and Strategic Advisors. *E.g.*, AC ¶¶ 30, 63. For the reasons described above with respect to her challenge to the Freedom Blend CITs, *supra* at 13, and her duty of loyalty claim, *supra* at 17. Plaintiff's Section 406(b)(1) claim fails because she alleges no facts plausibly suggesting that Centene was acting in its own interests by contracting with Fidelity and Strategic Advisors to provide essential services to the Plan.

Plaintiff's Section 406(a)(1) claim also fails. That section provides that a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . (C) furnishing of goods, services, or facilities between the plan and a party in interest; [or] (D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan." 29 U.S.C. § 1106(a)(1). Despite having multiple opportunities to do so, Plaintiff fails to allege a transaction between the Plan and a "party in interest." 29 U.S.C. § 1106(a)(1)(C). ERISA defines a "party in interest" as a "person *providing* services to [the] plan." 29 U.S.C. § 1002(14)(B) (emphasis added). Because ERISA's definition of "party in interest"

encompasses entities that a fiduciary might be inclined to favor at the expense of a plan's beneficiaries, a "party in interest" is "limited to entities that have *already begun providing services* to the plan at issue." *D.L. Markham DDS, MSD, Inc. 401(k) Plan v. Variable Annuity Life Ins.*, 88 F.4th 602, 609 (5th Cir. 2023) (emphasis added). Because Plaintiff does not allege Fidelity or Strategic Advisors was party in interest before Centene engaged them to provide the Plan's recordkeeping and managed account services, her prohibited transaction claim fails. *See Fleming v. Kellogg Co.*, 2025 WL 4053174, at *8 (W.D. Mich. Dec. 8, 2025); *Dempsey v. Verizon Commc'ns, Inc.*, 2026 WL 72197, at *23 (S.D.N.Y. Jan. 8, 2026).

## IV.    Plaintiff Fails To State A Monitoring Claim (Count IV).

Finally, Plaintiff alleges a baseless (and unsupported) failure to monitor claim against Centene, which fails at the outset because it is derivative of her other meritless fiduciary breach claims. *See, e.g.*, *Davis v. Salesforce.com, Inc.*, 2020 WL 5893405, at *7 (N.D. Cal. Oct. 5, 2020). Plaintiff's monitoring claim also fails because she relies entirely on conclusory allegations and still does not allege who Centene failed to monitor. All Plaintiff musters is that she is "informed and believes" that Centene appointed some unspecified "individuals, committees, or entities." AC ¶ 87. By not identifying those alleged designees or describing what responsibilities they were delegated (or how they relate to the claims she is asserting), she fails to plead even the basic elements of a monitoring claim. *See In re Calpine Corp. ERISA Litig.*, 2005 WL 1431506, at *6 (N.D. Cal. Mar. 31, 2005). Plaintiff's circular monitoring claim also establishes a fatal flaw in her claims against Centene: Plaintiff says Centene "delegated" its fiduciary responsibility, which "led to the issues alleged." AC ¶¶ 87-89. Plaintiff thus concedes that Centene did not engage in the conduct Plaintiff is challenging, which is fatal to all of her claims. *See, e.g.*, *Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000) (The "threshold question" is whether the defendant "was acting as a fiduciary . . . when taking the action subject to complaint.").

CONCLUSION

The Court should dismiss the Amended Complaint with prejudice.

Dated: March 16, 2026

Respectfully Submitted,

*/s/ Richard E. Nowak*
MAYER BROWN LLP

Richard E. Nowak (*Pro Hac Vice*)
*rnowak@mayerbrown.com*
71 South Wacker Drive
Chicago, IL 60606

E. Brantley Webb (*Pro Hac Vice*)
*bwebb@mayerbrown.com*
1999 K Street NW
Washington, D.C. 20006

Ankur Mandhania (SBN 302373)
*amandhania@mayerbrown.com*
575 Market St., Suite 2500
San Francisco, CA 94105

Malori McGill Fery (*Pro Hac Vice*)
*mmcgillfery@mayerbrown.com*
201 South Main Street, Suite 1100
Salt Lake City, UT 84111

*Counsel for Defendant Centene Corporation*

DEFENDANT CENTENE CORPORATION'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED CLASS ACTION COMPLAINT; CASE NO. 3:25-CV-09743-RFL