UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA CLARK,<br><br>   Plaintiff,<br><br>  v.<br><br>CENTENE CORPORATION,<br><br>   Defendant. | Case No.  25-cv-09743-RFL<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 38 |

Victoria Clark is a participant in the Centene Management Corporation Retirement Plan. The Plan is sponsored and administered by Centene Corporation.  Clark alleges that Centene violated the Employee Retirement Income Security Act of 1974 ("ERISA") in three ways: by (1) selecting Collective Investment Trusts ("CITs") as investment vehicles instead of mutual funds; (2) permitting excessive administrative and recordkeeping fees; and (3) using plan forfeitures to reduce its own contributions rather than pay administrative expenses.  Clark asserts four claims against Centene derived from those theories: (1) violation of the prohibited transactions provision, 29 U.S.C. § 1106; (2) breach of fiduciary duties, 29 U.S.C. § 1104(a)(1); (3) violation of the anti-inurement provision, 29 U.S.C. § 1103(c)(1); and (4) failure to monitor fiduciaries. Centene now moves to dismiss.  For the reasons stated below, Centene's motion is **GRANTED**. Dismissal is with leave to amend.  This order assumes the reader is familiar with the facts of the case, the applicable legal standards, and the parties' arguments.

***Selection of CITs.***  Clark has not plausibly alleged Centene's selection of CITs instead of mutual funds injured her in a way that gives rise to Article III standing.  She must allege that Centene's alleged ERISA violations harmed her, such as by causing her to pay higher fees.  *See*

1

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 524, 528 (9th Cir. 2023).  But it is not reasonable to infer that Clark paid higher fees just because the CITs are "structurally opaque" and Fidelity entities are both the Plan's recordkeeper and manager of the CITs.  (*See* Dkt. No. 34 ("FAC") ¶¶ 22–26.)  Similarly, though Clark speculates that CITs expose Plan participants to "massive unmonitored liquidity risks," she does not explain how those risks materialized or threaten imminent harm.  (*See id.* ¶ 27.)  Without allegations as to how the CITs' characteristics caused harm, she has not plausibly alleged standing.  *Cf. Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1075 (N.D. Cal. 2017) (finding similar allegations did not plausibly allege breach of fiduciary duties).

> ***Administrative and Recordkeeping Fees.***  As an initial matter, Clark has not plausibly alleged standing to challenge the Strategic Advisors managed account fees.  She does not allege that she enrolled in such an account.  Nor does she plausibly allege that the managed account fees were "charged to all Plan participants regardless of" the type of account that they enrolled in.  *See In re LinkedIn ERISA Litig.*, No. 20-CV-05704-EJD, 2021 WL 5331448, at *4 (N.D. Cal. Nov. 16, 2021).  As a result, she has not sufficiently alleged those fees injured her.

> Turning to the remaining fees, Clark fails to plausibly allege a breach of fiduciary duties. She alleges that Fidelity charged Plan participants $3 to $31 more per year than it charged participants in three other jumbo-classified plans.  (FAC ¶¶ 31–32, 37.)  But she provides no characteristics by which the plans can be compared, other than her characterization of them all as "jumbo" plans.  Without more, the three other plans are not plausibly alleged to be reasonable comparators.  *See Carrillo v. Amy's Kitchen, Inc.*, No. 23-CV-01359-RFL, 2025 WL 4722604, at *5–7 (N.D. Cal. Feb. 24, 2025); *see also Williams v. Centene Corp.*, No. 22-CV-00216-SEP, 2023 WL 2755544, at *5 (E.D. Mo. Mar. 31, 2023) (reaching the same conclusion with similar challenge to the Plan's recordkeeping fees).  Though Clark need not compare "only Gala apples to Gala apples," she still must plausibly allege that the comparator plans are apples rather than oranges.  *See McGeathy v. Reinalt-Thomas Corp.*, No. 25-CV-01439-DLR, 2026 WL 617343, at *3 (D. Ariz. Mar. 5, 2026).  Because she has not done so, it is not plausible that Fidelity's fees

were excessive and therefore that Centene breached its duty of prudence.  Similarly, Clark has not plausibly alleged Centene breached its duty of loyalty because she alleges only "the potential for conflicts of interest, with nothing more."  *See Anderson v. Intel Corp. Inv. Pol'y Comm.*, 137 F.4th 1015, 1027 (9th Cir. 2025), *cert. granted on other question*, 223 L. Ed. 2d 553 (Jan. 16, 2026).

With respect to her prohibited transaction claim concerning those fees, Centene contends Clark lacks Article III standing to assert this claim because she does not plausibly allege an injury from those fees.  It is not clear from the Amended Complaint whether Clark bases this claim on an allegation that the fees were too high, or whether she also claims to have been injured purely based on Fidelity's alleged role as a party in interest.  If the former, she has not adequately stated a claim alleging excessive fees for the reasons explained immediately above.  If the latter, Clark has not sufficiently alleged how Fidelity's role caused her injury, absent any increase in the fees, and thus has not adequately alleged Article III standing to bring such a claim.

*Forfeitures.*  The Plan provides Centene with discretion to use forfeited matching contributions either to pay administrative expenses or reduce its own contributions.  (FAC ¶ 44.) When choosing between these options, Centene is plausibly alleged to be acting as a fiduciary. *See Hutchins v. HP Inc.* ("*Hutchins II*"), 767 F. Supp. 3d 912, 922 (N.D. Cal. 2025); *McManus v. Clorox Co.* ("*McManus II*"), No. 23-CV-05325-YGR, 2025 WL 732087, at *2 n.3 (N.D. Cal. Mar. 3, 2025).  But Clark has not plausibly alleged that Centene breached its fiduciary duties. She alleges that "in violation of IRS regulations, Centene failed to exhaust these forfeiture suspense accounts by year-end," but never explains what regulation was violated or how that demonstrates a breach of fiduciary duties.  (*See* FAC ¶ 6.)  She also alleges that between 2020 and 2023, "Centene consistently and reflexively chose itself" by dedicating forfeitures to reduce its own contributions.  (*Id.* ¶¶ 45–47.)  But there are situations in which that choice might be prudent, such as when the company is at risk of either not meeting its contribution obligations or

3

reducing its future discretionary matching contributions.  (*See* Dkt. No. 39-6 at 88.)[1]  In light of that backdrop, more is needed to plausibly allege a breach of the duty of prudence.  *See McManus II*, 2025 WL 732087, at \*2–4 (finding plausible breach of the duty of prudence where the company had "sufficient cash and equivalents on hand to satisfy its contribution obligations," decided to reduce non-elective contributions, and "failed to consult with an independent nonconflicted decisionmaker").  Though Clark makes a passing allegation that Centene "fail[ed] to investigate which option was in the best interest of the Plan," that is too conclusory to plausibly allege a complete lack of investigation.  (*See* FAC ¶ 49.)

Similarly, more is needed to plausibly allege a breach of the duty of loyalty.  *See McManus II*, 2025 WL 732087, at \*2–4.  Without more specific factual allegations, Clark essentially asks to impose a per se rule that forfeitures must always be used to pay administrative expenses.  Such per se rules of fiduciary conduct are generally inappropriate under ERISA.  *See Friend v. Sanwa Bank Cal.*, 35 F.3d 466, 469 (9th Cir. 1994) (citing *Fentron Indus., Inc. v. Nat'l Shopmen Pension Fund*, 674 F.2d 1300, 1307 (9th Cir. 1982), *abrogated in irrelevant part*).

Clark also fails to plausibly allege that Centene's use of the forfeitures to reduce its own contributions constituted a prohibited transaction.  Without more, since the Plan provided Centene with discretion to use the forfeitures in this way, it is not reasonable to infer that such use was prohibited, rather than constituting a permissible intra-plan transfer.  *See Hutchins v. HP Inc.* ("*Hutchins I*"), 737 F. Supp. 3d 851, 868 (N.D. Cal. 2024); *Hutchins II*, 767 F. Supp. 3d at 928; *McManus v. Clorox Co.* ("*McManus I*"), No. 23-CV-05325-YGR, 2024 WL 4944363, at \*7–8 (N.D. Cal. Nov. 1, 2024).

Finally, Clark fails to plausibly allege that Centene's allocation decision violated ERISA's anti-inurement prohibition.  She alleges that Centene incidentally benefitted from its decision to allocate forfeitures towards reducing its own contributions.  But that is insufficient to state an anti-inurement claim, as she must allege a reversion or diversion of Plan assets.  *See*

---

[1] All citations to page numbers in filings on the docket refer to ECF pagination.

*Hutchins I*, 737 F. Supp. 3d at 865–67; *McManus I*, 2024 WL 4944363, at *7.

***Failure to Monitor.***   Clark's failure to monitor claim is derivative of her other claims, so it rises and falls with her other claims. *Carrillo*, 2025 WL 4722604, at *7.  Since Clark has not plausibly alleged an ERISA claim against Centene or its delegates, she has also not plausibly alleged that it failed to monitor. *See id.*

***Conclusion.***   Centene's motion to dismiss is **GRANTED**.  Because amendment does not necessarily appear futile, dismissal is with **LEAVE TO AMEND**.  If Clark wishes to file an amended complaint correcting the deficiencies identified above, she shall do so by **August 6, 2026**.  The amended complaint may not add new claims or parties, or otherwise change the allegations except to correct the identified deficiencies, absent leave of the Court or stipulation by the parties pursuant to Federal Rule of Civil Procedure 15.  If no amended complaint is filed by that date, those claims that have been dismissed for lack of Article III standing will remain dismissed without prejudice, those claims dismissed for failure to state a claim will remain dismissed with prejudice, judgment will be entered in favor of Centene, and the case will be closed.

**IT IS SO ORDERED.**

Dated: July 16, 2026

RITA F. LIN
United States District Judge